William FARRELL et al.

v.

CONNETTI TRAILER SALES,
INC. et al.

No. 98–91–Appeal.

Supreme Court of Rhode Island.

March 17, 1999.

Kenneth Glenn Littman, Fall River, MA, for Plaintiff.

John F. Kelleher, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

OPINION

PER CURIAM.

Introduction

Spoliation[1] of key evidence—namely, a motor home—resulted in the Superior Court's dismissal of this lawsuit. The plaintiffs, William Farrell and Barbara Farrell (the Farrells), sued the defendants, Connetti Trailer Sales, Inc. (Connetti) and Fleetwood Enterprises, Inc. (Fleetwood), for damages allegedly caused by defective repairs to their motor home. Because the Farrells arranged for a bank to repossess the motor home before they filed this suit, Connetti and Fleetwood were unable to inspect the vehicle after the lawsuit began to determine whether the repairs were defective, as the Farrells alleged. The defendants successfully moved in limine to preclude the Farrells from introducing any evidence about the condition of the motor home after Connetti had performed the initial repairs to the vehicle. Without that evidence, the Farrells' case was doomed, and the court's dismissal of their claims followed hard by this preclusive ruling. The Farrells now appeal from the entry of judgment for the defendants.

We ordered the parties to show cause why we should not decide this appeal summarily without further briefing and argument. None having been shown, we proceed to vacate the dismissal of this action and to remand the papers in this case for a new trial. Our reasons for doing so are set forth below.

### Facts and Travel

In March 1989, the Farrells purchased a 1989 Pace Arrow motor home for the amount of $74,164. They bought the motor home from Connetti, a Rhode Island retailer of motor homes and trailers. Fleetwood manufactures Pace Arrow motor homes and its principal office is located in California. In October 1989, pursuant to a recall notice, the Farrells returned the motor home to Connetti to replace the rear tag axle. The Farrells allege that Connetti performed these repairs improperly, causing suspension problems that dogged them for the next two and a half years that they owned the vehicle.

As the Farrells were traveling to the west coast in the month following the repair work,

they noticed a squeaking noise in the rear of their motor home and experienced unusual vibrations when they drove the vehicle. The Farrells claim that the constant vibrations caused damage to the interior of the vehicle by jolting fixtures out of place. In late November 1989, they brought the motor home to Findlay's R.V. Center, Inc. (Findlay's) in Las Vegas, Nevada to have these problems checked. After consulting with Fleetwood representatives, Findlay's repaired the rear tag axle. According to the Farrells, a Findlay's mechanic told them that Connetti had performed the repairs improperly under the recall program. Fleetwood eventually authorized and paid for the repairs to the axle, but did not initially approve of, nor pay for, any repairs to the interior of the vehicle.

The Farrells continued to experience problems with the motor home, including constant vibrations while they were driving; a squeaking floor; various doors, drawers, and other cabinetry being out of square; a leaking skylight; a loose table; a couch and window that would not close properly; as well as sundry other troubles. As a result, the Farrells contacted a Fleetwood warranty representative in the spring of 1990 concerning alleged continuing problems with the suspension and sought reimbursement for the interior repairs made by Findlay's. Eventually, Fleetwood agreed to reimburse the Farrells for those repairs. By late 1991, the Farrells were living in Florida in the motor home. At that time, they complained to the Bank of the West (bank), the institution that had financed the motor home, about their ongoing difficulties with the vehicle. Through a suggestion made by the bank, the Farrells brought the vehicle to Westward Ho, in Bradenton, Florida, for further repair work. Although Fleetwood authorized and paid for these repairs, Westward Ho did not have the necessary equipment to do chassis repair. Consequently, the vehicle continued to vibrate.

Fleetwood representatives requested several times by letter and by telephone that the Farrells bring the vehicle back to Connetti or to a regional service center in Paxinos, Penn-

---

1. "Spoliation" is defined as: "[t]he intentional destruction of evidence and when it is established, fact finder may draw inference that ev- idence destroyed was unfavorable to party responsible for its spoliation." Black's Law Dictionary 1401 (6th ed.1990).

sylvania for inspection and any necessary repairs. The Farrells, however, failed to bring the vehicle to either place. Furthermore, even though Fleetwood offered in early May of 1992 to pick up the motor home, transport it to Pennsylvania for inspection, and then return it to the Farrells at no charge to them, the Farrells refused that offer as well. At the pretrial hearing, Mr. Farrell testified that although they drove the motor home up the east coast from Florida to Rhode Island in April 1992 and passed through Pennsylvania, the Farrells did not stop in Paxinos because Mr. Farrell had never heard of Paxinos and it would have been out of their way to get there. Mr. Farrell also testified that he refused to drive the motor home to Paxinos or to have Fleetwood transport it to Paxinos because he already had made arrangements to surrender it to the bank. Indeed, by April or May 1992, the Farrells decided to surrender the motor home to the bank and they so advised defendants. In June 1992, the bank repossessed the vehicle that secured its loan to the Farrells. The Farrells still owed approximately $27,000 to the bank at that time. The bank later informed them that it had to sell the vehicle "at much less than its value because of its condition."

Approximately two years later, the Farrells filed suit against Connetti and Fleetwood. Thereafter, defendants filed a request for production of the motor home for inspection. However, because the Farrells already had surrendered the motor home to the bank, which subsequently sold it to another party, they were unable to comply with this request. Thus, the motor home was not available for inspection by defendants after the Farrells began their lawsuit. Each of the defendants then filed amended answers, adding the affirmative defense of spoliation, and subsequently moved in limine, based on spoliation, to preclude the Farrells from introducing any evidence concerning the condition of the motor home after it left Connetti's hands. After hearing arguments, a Superior Court justice granted defendants' motion in limine, and thereafter granted defendants' motion to dismiss the Farrells' complaint on the ground that "there are no set of facts

admissible at trial which would give rise to a cause of action against the defendants."

At the hearing, the trial justice refused to speculate on the Farrells' motivation for disposing of the motor home without allowing defendants the opportunity to inspect it. He assumed that the Farrells had acted in good faith, but determined that defendants had been "prejudiced to a high degree by an inability once the suit had been commenced to view this vehicle." The trial justice discussed at some length the doctrine of spoliation and concluded that allowing the case to go to a jury with an inference that the missing evidence would have been unfavorable to the Farrells was not a sufficient remedy. He concluded that, in this case, the motor home was not just a mere piece of evidence, but rather it lay at the very heart of the case. It would be "patently unfair," he stated, to allow the Farrells to testify before a jury about what they and their expert thought were the vehicle's defects without having allowed the defense a reasonable opportunity to counteract those claims. The trial justice also noted that on at least four or five occasions, Fleetwood requested an opportunity to inspect and repair the vehicle while the Farrells still owned it, but they denied those requests. The Farrells appeal from this judgment and the accompanying dismissal of their complaint.

The Farrells argue that the trial justice erred in excluding all evidence of the motor home's condition. First, they contend that because this Court had not yet adopted the doctrine of spoliation when they surrendered the motor home to the bank, the trial justice unfairly and unjustly applied the doctrine retroactively to this case. Second, they assert that the spoliation doctrine is inapplicable because Fleetwood clearly was aware of the motor home's condition through various conversations Mr. Farrell had with Fleetwood representatives. Therefore, the Farrells assert, defendants were not prejudiced merely because they were unable to inspect the motor home. Third, the Farrells complain that the evidence-preclusion remedy was unduly harsh. They argue that the trial justice should have allowed them to introduce evidence regarding the vehicle's condition

and simply instructed the jury that the unavailability of this tangible evidence via the Farrells' actions raised an inference unfavorable to their position.

In response, defendants first point out that the Farrells traveled and lived in the motor home for over three years before turning it over to their financing company, and then sought damages for the full value of the motor home, as well as incidental expenses. The defendants aver that the loss of the vehicle irremediably prejudiced their ability to defend in this case. They note that Fleetwood repeatedly asked the Farrells to bring the motor home to its regional service center or to Connetti, and even offered to pick up the vehicle in Rhode Island and transport it to Pennsylvania and back. The Farrells' refusal to comply with those requests, defendants argue, and their subsequent failure to preserve the vehicle as evidence, completely undercut defendants' ability to present evidence to rebut the Farrells' claims. Moreover, according to defendants, the Farrells knew when they surrendered the vehicle that they were planning to file a lawsuit, and in fact had threatened several times previously to do so. The defendants also assert that the trial justice did not apply the doctrine of spoliation retroactively in this case. Although this Court first discussed the spoliation doctrine by name in *Rhode Island Hospital Trust National Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227 (R.I.1996), the doctrine, they maintain, is one that long predates the *Eastern General* decision. Finally, defendants point out that, pursuant to G.L.1956 § 6A–2–515, they had the right to inspect or test goods, the quality of which is in dispute—a right which the Farrells violated when they rebuffed defendants' requests to do so and instead allowed the bank to repossess the motor home.

### Standard of Review

■ It is clearly established that "the admissibility of evidence is within the sound discretion of the trial justice." *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 758 (R.I.1997) (quoting *Soares v. Nationwide Mutual Fire Insurance Co.*, 692 A.2d 701, 701–02 (R.I.1997) (mem.)). "[T]his Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is apparent." *Id.*

### Analysis

■ In *Eastern General*, this Court addressed the doctrine of spoliation.[2] There, the plaintiff bank moved to exclude any evidence regarding its possible recording of a telephone conversation with a representative of the defendant. Although the bank routinely recorded all conversations on certain telephones, it was unclear whether the bank actually had recorded the conversation at issue. We held that the trial justice erred in granting the bank's motion to exclude any evidence about the possibility of a recording because the defendant was entitled to present to the jury evidence that a recording may have existed before the bank destroyed it, pursuant to the doctrine *omnia praesumuntur contra spoliatiorem* ("all things are presumed against a despoiler"). 674 A.2d at 1234. Under this doctrine, the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence would have been unfavorable to the spoliating party. A showing of bad faith on the part of the despoiler is not necessary to permit the spoliation inference, even though it may strengthen the inference. *See id.*

Here, the Farrells clearly were aware of the potential relevance of the motor home to their dispute with defendants when they took steps to refuse Fleetwood's requests to take possession of the vehicle for inspection and repair purposes, and when they subsequently allowed the bank to repossess the motor

---

**2.** This Court also briefly discussed spoliation in *Sampson v. Marshall Brass Co.*, 661 A.2d 971 (R.I.1995) (mem.). In that case, the Court considered whether Rule 37(b)(2) of the Superior Court Rules of Civil Procedure permits dismissal with prejudice of a product-liability action based on spoliation of the allegedly defective product, even when the spoliation is not willful, intentional, or the result of any negligence on the part of the plaintiffs. The Court concluded that "[i]n the absence of a record exploring the reasons for the inability of the plaintiffs in this case to produce the missing [product], we are of the opinion that Rule 37(b)(2) does not permit such drastic consequences as dismissal with prejudice." 661 A.2d at 971.

home. However, while *Eastern General* is instructive, it does not address the situation presented in the case at bar, in which the trial justice went beyond instructing the jury about drawing an adverse inference from the motor home's unavailability and ruled that the Farrells' disposal of the central piece of evidence barred their introduction of all other evidence of the vehicle's condition after Connetti had performed repair work.

Courts in other jurisdictions have recognized the inherent authority of a trial court to bar all evidence relating to an expert's opinion, or even to a party's case-in-chief, based on that party's destruction of critical evidence. *See Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267–69 (8th Cir.1993); *Patton v. Newmar Corp.*, 538 N.W.2d 116, 118–19 (Minn. 1995); *Bachmeier v. Wallwork Truck Centers*, 544 N.W.2d 122, 124–27 (N.D.1996). In fact, some courts have held that when a plaintiff's loss or destruction of an allegedly defective product before trial deprives a defendant of the most direct means of countering the allegations, then dismissal of the plaintiff's case, *see Graves v. Daley*, 172 Ill. App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679 (1988), or the entry of summary judgment for the defendant, *see Lee v. Boyle–Midway Household Products, Inc.*, 792 F.Supp. 1001 (W.D.Pa.1992), may be appropriate. *See generally* Phoebe L. McGlynn, *Spoliation in the Product Liability Context*, 27 U. Mem. L.Rev. 663 (1997) (discussing various court-imposed sanctions when a party spoliates evidence). Other courts have used five factors in determining an appropriate sanction for the spoliation of relevant evidence: " '(1) whether the defendant was prejudiced \* \* \*; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the [despoiler acted] in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded.' " *Northern Assurance Co. v. Ware*, 145 F.R.D. 281, 282–83 (D.Me.1993) (quoting *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 365 (D.Mass. 1991)). The trial justice in the case at bar appropriately considered these five factors before concluding that they warranted exclusion of the Farrells' evidence concerning the motor home's condition.

■ We are of the opinion, however, that under the circumstances of this case, the trial justice went too far, and thereby abused his discretion, in selecting a suitable remedy for the Farrells' spoliation of the motor home. Here, he decided to impose the following sanctions in response to the Farrells' spoliation: (1) barring the Farrells' introduction of all evidence of alleged defects to the motor home after Connetti performed the initial repair work, and thereafter, (2) granting defendants' motion to dismiss. Preclusion of all post-Connetti-repairs evidence relating to the Farrells' defective-repair claims was unwarranted, we conclude, because defendants introduced no evidence of bad faith or willful destruction of this evidence. Given the Farrells' allegations that defendants had botched several previous attempts to repair the vehicle, their denial of defendants' request for them to transfer possession of their motor home to defendants for an indeterminate period of time so that defendants could perform further inspections and repairs as needed was not so arbitrary and unreasonable as to warrant preclusion of all defective-repair evidence. Moreover, after the Farrells refused Fleetwood's request to take possession of their motor home so that defendants could perform an in-house inspection and any necessary repairs, defendants never attempted to conduct an on-site or field inspection of the motor home without removing the vehicle from the Farrells' possession. Indeed, defendants never requested that the Farrells permit their agents to examine and/or to inspect the motor home wherever it may have been located *before* the Farrells arranged for the bank's repossession of the vehicle. Thus, although the Farrells told defendants that they intended to allow the bank to repossess the motor home and that they would not bring the vehicle to defendants' service center or allow defendants to do so, defendants did not request, nor did the Farrells deprive them of, an opportunity to inspect the motor home in the field or at the vehicle's location before the bank repossessed it.

Therefore, we are of the opinion that the trial justice should not have gone so far as to preclude the Farrells from introducing all evidence of the alleged defective repairs to the motor home after the vehicle left Connetti. The defendants' agents and other repair and servicing personnel did have the opportunity to inspect and/or repair the vehicle on several occasions thereafter, and the records from these occasions—as well as the observations of those persons who attempted to repair the vehicle—would have been relevant and material to the alleged defective repair work at issue and should not have been peremptorily excluded from evidence merely because the Farrells failed to preserve the motor home for inspection when they decided to file this lawsuit.

 For these reasons, we reverse and remand this case for a new trial. The court shall allow the Farrells to introduce evidence of defective repairs and permit the defendants to rebut this evidence as best they can. Moreover, the court shall instruct the jury that, because of the Farrells' conduct causing the motor home's unavailability to the defendants for inspections at their designated facilities both before and after they filed this action, the jury can infer that if the defendants had been allowed to conduct such an inspection, then they would have discovered evidence indicating that the repairs to the vehicle were not defective. In other words, the Court shall limit the remedy for the Farrells' spoliation of evidence to a jury instruction advising the jury that, based upon the Farrells' conduct in arranging for the motor home to be unavailable for the defendants to conduct an inspection of the alleged defective repairs at one of their service centers or at other designated facilities, it can draw an adverse inference against the Farrells concerning the supposedly defective repair work. The jury shall be told that such an adverse inference is permissible, but not mandatory.

Thus, we sustain the Farrells' appeal, vacate the order granting the motion in limine and the dismissal judgment, and remand the papers in this case for a new trial that shall proceed in accordance with this opinion.