Marc N. TANCRELLE

v.

FRIENDLY ICE CREAM CORPORATION.

No. 99–380–Appeal.

Supreme Court of Rhode Island.

July 21, 2000.

---

George Lieberman, Anthony J. Bucci, Jr., Glenn R. Friedemann, Providence, for Plaintiff.

Peter A. Carkin, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Court on May 8, 2000, on the appeal of the defendant, Friendly Ice Cream Corporation (defendant or Friendly), from a judgment for the plaintiff, Marc N. Tancrelle (plaintiff or Tancrelle), in Providence County Superior Court following a jury award in the amount of $1,682,279. For the reasons stated below, we deny the appeal and affirm the judgment.

## FACTS AND TRAVEL

On May 27, 1993, Tancrelle, a plumber, arrived at defendant's restaurant in East Providence, Rhode Island, to install a hot water heater in the basement. At the time, Tancrelle worked as a master plumb-er for Greenwood Heating, Plumbing & Solar, Inc. (Greenwood), in Warwick, Rhode Island. Tancrelle testified at trial that upon arriving at Friendly's, he introduced himself to Delores O'Brien (O'Brien), the store manager, who directed him to a water heater in the rear of the kitchen. Although Greenwood supplied hot water heaters, Tancrelle testified that this particular hot water heater was not supplied by Greenwood; rather it had been supplied by Friendly. Tancrelle testified that he was somewhat dismayed by the fact that the unit had been delivered to the kitchen, because the installation was intended for the basement. According to Tancrelle, a winding staircase descended from the kitchen to the basement, but the water heater was too big to fit through the doorjamb to the kitchen staircase. Tancrelle testified that to fit it through the door, he would have to uncrate the water heater, and it would take two men to maneuver the unit down the kitchen stairs. According to Tancrelle, he asked O'Brien whether there was a bulkhead he could use to take the water heater to the basement. He said O'Brien assured him that there was and directed him to it. Tancrelle reasoned that a bulkhead[1] staircase would afford easier access to the basement because he could tie a rope around the heater to slowly lower it down the bulkhead stairs. At that point, Tancrelle went to the basement through the kitchen and, using his flashlight, located the bulkhead. Tancrelle testified that he noticed the bulkhead was bolted, and he proceeded up the stairs to release the bolt.

As he turned to walk down the bulkhead stairs, the top stair gave way and Tancrelle fell, hitting his back at least twice before landing on the bottom step, which also gave way. Tancrelle testified that when he looked up to determine what had happened, he noticed that the supporting

---

1. A bulkhead is a projecting framework with a sloping door giving access to a cellar stair-way or shaft.

stringers [2] were damaged and appeared rotted. The damaged stringers, he said, caused him to fall. He said they had been damaged by water leaking into the bulkhead from the outside. Tancrelle testified there were two stringers that ran along the foundation wall and supported the staircase. He said that although the top portions of both stringers were rotted, he noticed as he ran his flashlight down one stringer, that the deterioration seemed more pronounced. Tancrelle said that he returned to the kitchen and notified O'Brien of the incident and showed her the damaged staircase. According to Tancrelle, O'Brien told him that the stairs were rotted as a result of water leaking into the basement for at least three years. O'Brien subsequently disputed Tancrelle's account of this conversation; she denied that he notified her of the fall, but admitted that he told her that the bulkhead stairs were unsafe. She testified that she was uncertain whether Tancrelle actually had fallen. Tancrelle also testified that he notified his supervisor at Greenwood of the incident and requested assistance to bring the water heater to the basement via the interior staircase.

Thereafter, Dennis Reddy (Reddy), a co-worker of Tancrelle's at Greenwood, arrived at the scene. He helped Tancrelle with the new water heater and helped him remove the old unit from the premises. Reddy testified that, in an effort to determine the more suitable access to the basement, he also inspected the bulkhead stairs, concluded that they were rotted and unsafe, and decided to use the interior staircase. Referring to the installation of the new water heater and the removal of the old unit, both Tancrelle and Reddy testified that because Tancrelle was in pain, Reddy did most of the work that day. Tancrelle acknowledged that he finished the job at Friendly's that day, although he was in pain, and that although he had lingering pain the following morning, he went to work as usual. However, the pain was so intense that Tancrelle left work that morning. He initially rested for two to three days, after which, according to Tancrelle, the pain increasingly worsened to the point where he began treatment with several orthopedists, neurologists and neurosurgeons. Ultimately, in May 1994, Tancrelle underwent unsuccessful surgery for a herniated disk. Approximately one month after the incident, Tancrelle's attorney notified the restaurant of Tancrelle's intention to file a claim against Friendly's insurance carrier.

James Beland (Beland), then the general manager of the East Providence restaurant, testified that during his three-year tenure, from 1991 to 1993, the bulkhead stairs never had been used. At trial, Beland testified that, save for the installation and removal of the water heaters, he was unaware of the events that transpired on May 26, 1993, and that he learned of the incident only when he received a letter from Tancrelle's attorney. Beland notified his superiors of the possible claim, and was instructed to take statements from all personnel on duty that day and to photograph the bulkhead stairs. Beland testified that with the exception of the last step, which appeared to be off the support on one side, he found no damage to the stairs. Beland stated that he secured the bottom step with a piece of wood.

The evidence disclosed that in November 1993 the bulkhead stairs were used for a second time during Beland's tenure. Beland testified that a large shipment of gift boxes was delivered to the basement in preparation for the holidays, a delivery in which ten people went up and down the staircase for more than two hours. According to Beland, at one point during the delivery, the stairs tipped to one side. Specifically, Beland admitted that "the entire set of stairs shifted probably about two to three inches upon the vertical support in the back [and as a result it] gave

2. A stringer is "[a] horizontal timber used to support upright posts." The American Heritage Dictionary of the English Language 1780 (3rd ed. 1996).

way." Beland testified that, although he was able to complete the delivery, he remained concerned about the safety of the stairs. Accordingly, the next day he relayed those concerns to defendant, and soon thereafter the stairs were dismantled and replaced.

In what can be described only as a fortuitous coincidence, Greenwood received another call from the restaurant about a leak in the basement. Michael Zolkos (Zolkos), a Greenwood employee, testified that on November 18, 1993, he arrived at Friendly's intending to repair the leak. Zolkos was given a camera by his supervisor with instructions to photograph the bulkhead stairs. Zolkos testified that upon examining the stairs, he noted that the bottom three stairs appeared to be off the stringer and were in "pretty bad shape." Also, he said that although the bulkhead was closed, the other stairs appeared to be rotted. In addition, Zolkos testified that after taking the photographs, he placed the camera containing the film in his truck and proceeded to fix the leak. However, Zolkos's stint as a freelance photographer was short-lived. Soon thereafter, an individual from Friendly demanded that Zolkos turn over the fruits of his labor, informing him that the photographs were the property of defendant. After conferring with his supervisor, Zolkos surrendered the camera, and those not-so-friendly photographs never resurfaced. Zolkos testified that after he relinquished the camera, a crew arrived and the bulkhead stairs were removed and replaced with a new set of stairs.

On October 17, 1994, Tancrelle filed this negligence action in Providence County Superior Court. A jury trial was held on May 18, 1999, to June 4, 1999, culminating in a jury verdict for plaintiff in the amount of $1,682,279. The defendant motioned for a new trial, which was subsequently denied. Thereafter, defendant filed this timely appeal. Additional facts will be supplied as they are necessary to address the issues raised in this appeal.

## DISCUSSION

The defendant raised numerous issues on appeal, some of which were not appropriately preserved for appellate review, and others which are devoid of merit. Therefore, we shall address only those issues we deem relevant and properly before us.

### I

### Spoliation

The defendant argued that the trial justice erred in admitting evidence under the guise of spoliation. Under the doctrine *omnia praesumuntur contra spoliatorem*, "[a]ll things are presumed against a despoiler or wrongdoer," Black's Law Dictionary 1086 (6th ed.1990), the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party. *Rhode Island Hospital Trust National Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227, 1234 (R.I.1996). This Court has held that although a showing of bad faith may strengthen the inference of spoliation, such a showing is not essential. *Farrell v. Connetti Trailer Sales, Inc.*, 727 A.2d 183, 186 (R.I.1999) (citing *Rhode Island Hospital Trust National Bank* at 1234).

Specifically, defendant contended that the trial justice erred by allowing Tancrelle to offer as evidence of spoliation the fact that defendant replaced the stairs and failed to preserve the original stairs for inspection by plaintiff's expert. Additionally, defendant complained that the trial justice permitted plaintiff to introduce evidence of Friendly's inability to produce its employee's work schedules, despite the fact that they were requested during the early stages of discovery. Finally, defendant challenged on appeal the introduction of evidence about Zolkos's purloined photographs taken on the very day the stairs disappeared. We are of the

opinion that Tancrelle was entitled to present this evidence pursuant to the doctrine of spoliation, and are satisfied that the jury instruction pertaining to spoliation was appropriate. In *New Hampshire Insurance Co. v. Rouselle*, 732 A.2d 111, 114 (R.I.1999), we held that "the doctrine of spoliation merely *permits* an inference that the destroyed evidence would have been unfavorable to the despoiler," and is by no means conclusive. We are satisfied that the doctrine was appropriately applied in this case.

First, with regard to the removal and destruction of the stairs, we note that it was not the removal of the stairs, but rather their destruction, that gave rise to the spoliation instruction. Although the condition of the stairs may have posed a safety hazard necessitating their removal, defendant was on notice beginning in June of 1993 of Tancrelle's potential claim. In light of this, defendant's failure to notify plaintiff of the impending remedial action and to afford plaintiff an opportunity to physically inspect the condition of the stairs may give rise to the permissible inference that the condition of the stairs was harmful to Friendly's defense.

■ At the very least, knowing that Tancrelle alleged injuries resulting from a fall down the stairs and having received actual notice that the condition of the stairs may be relevant in a potential lawsuit, defendant should have retained possession of the stairs, thereby preserving them for future inspection. "An 'obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely * * *.'" *Conderman v. Rochester Gas & Electric Corp.*, 180 Misc.2d 8, 687 N.Y.S.2d 213, 217 (1998).

Here, the evidence demonstrated that defendant removed and destroyed the stairs on the very day Zolkos's photographs were seized, and made no effort to maintain or preserve the stairs, thereby denying plaintiff the opportunity to inspect this evidence. The record discloses that defendant undertook this course of conduct despite actual knowledge of the potential for litigation. As a result, relevant evidence was irretrievably lost. Thus, it was clear to the trial justice, and it is clear to this Court, that the deliberate or negligent destruction of relevant evidence is admissible against a party to permit an inference that perhaps that evidence was unfavorable to the spoliator. Moreover, we are not persuaded by defendant's argument that plaintiff was not prejudiced by the unavailability of the stairs. In fact, defendant was able to successfully preclude Tancrelle from presenting expert testimony relative to the condition of the stairs on the day of the incident, an issue that was exceedingly relevant and hotly contested by the parties. Clearly, this amounted to actual prejudice to plaintiff, who was deprived of the opportunity to present expert-opinion testimony relative to this important issue. All Tancrelle had left was this inference. We therefore conclude that the trial justice did not commit error in permitting evidence relative to the missing stairs, and that his instruction on spoliation was appropriate.[3]

---

3. The instruction on the spoliation of evidence, as given by the trial justice, was as follows:

"During the course of this trial, you have heard testimony that one of the parties may have destroyed, may have mutilated certain evidence. When evidence is destroyed, we call it spoliage. Spoliage of that evidence. And under certain circumstances, the spoliage of evidence may, if you find, it is not required[,] that it give rise to an adverse inference, that the spoliated evidence would have been unfavorable to the position of the party who destroyed or mutilated that evidence.

"Spoliation of evidence may be innocent or it may be intentional, or it can be somewhere in-between the two. It is the unexplained and deliberate destruction or mutilation of relevant evidence that gives rise to an inference that the thing which has been destroyed or mutilated would have been unfavorable to the position of the person responsible for the spoliation. If you find that the defendant destroyed or mutilated the stairs, the photographs of the stairs, the schedule of

Next, defendant contended that the trial justice erred in his evidentiary rulings and instruction about the inability of defendant to produce daily work schedules of Friendly's employees, which were requested by plaintiff in preparation for trial. In 1994, during the initial stage of this litigation, plaintiff propounded interrogatories upon defendant, requesting the names and addresses of all employees who worked at the restaurant on the day of the incident. Despite testimony that it was the practice of Friendly to maintain these schedules for up to three years, and evidence that the work schedules existed at the time of plaintiff's request, the work schedules for the day of the incident were never produced. The defendant maintained that it produced all the information it had *at the time*, which included the names and last-known addresses of its employees who had worked during the week of plaintiff's injury, rather than on the day of the incident. The trial justice permitted plaintiff to introduce evidence of defendant's discovery responses that clearly gave rise to the inference that defendant deliberately deprived plaintiff of that evidence. On appeal, defendant argued that this evidence was destroyed in accordance with Friendly's records-retention policy. However, this defense was not proven at trial.

Indeed, we note that in the midst of trial, defendant requested and was granted a continuance to present the testimony of a previously unidentified witness about Friendly's records-retention policy. The trial was continued to allow plaintiff the opportunity to depose this new witness. However, after designating yet a different witness and arranging for his deposition, defendant ultimately elected not to introduce this testimony. Nevertheless, on appeal, defendant purported to rely on its records-retention policy despite having elected to forgo the presentation of this evidence to the jury. Notwithstanding, defendant has argued that Friendly's inability to produce daily work schedules was not spoliation of evidence because the specific data was not retained for *so long a period of time* as part of Friendly's routine business practice of record management. However, defendant presented no testimony about its routine records-retention policy, despite being given every opportunity to do so. Further, there is little or no evidence in the record that would substantiate this defense. On the contrary, the record discloses that it was the practice of defendant to maintain such records for three years, particularly when there is the possibility of litigation. The record discloses that defendant was notified of a potential claim immediately following the injury in June 1993, and the work schedules were requested in 1994, well within the three-year window upon which Friendly now seeks to rely. Thus, Friendly's contention that the evidence was unavailable because of its routine business prac-

the employees, or any other item, and did so deliberately, then you are permitted to infer that * * * your consideration of the evidence would have been unfavorable to the defendant's position in this case.

"In deciding whether or not the destruction or mutilation of the evidence was deliberate, you may consider all of the facts and circumstances which were proved at trial, and which are pertinent to that particular item of evidence. You may consider who destroyed it, how it was destroyed, the legitimacy, or the lack of legitimacy in the reasons given for its destruction. You may consider the timing of the destruction. You may consider whether the individual destroying the evidence knew the evidence might be supportive of the opposing party. You may consider whether the

spoliation was intended to deprive the court of evidence, as well as other facts and circumstances which you find to be true.

"You may also consider the extent to which it has been shown that the spoliated evidence would indeed have been unfavorable to the defendant's position. If the spoliation of the evidence is attributable to carelessness or negligence on the part of the defendant, you may consider whether the carelessness or negligence was so gross as to amount to a deliberate act of spoliation.

"It is the function of the jury exclusively to resolve factual issues and to decide what it is that really happened here. It is your obligation and duty to zealously guard against any erosion of that function, however unintentional that it might have been."

tice does not comport with defendant's previous admissions. We therefore deem this belated excuse and argument to be without merit and decline to review the trial justice's evidentiary rulings on the basis of facts not before him. *See Ludwig v. Kowal*, 419 A.2d 297, 302 (R.I.1980) (a party may not advance new theories or raise new issues or arguments on appeal).

 Lastly, defendant argued that it was error for the trial justice to permit testimony of the photographs seized from Zolkos, the Greenwood employee who, while at the restaurant to repair a leak, seized the opportunity to photograph the stairs. Specifically, defendant contended that because the film was never located, it is unclear what, if anything, the photographer captured on film. Further, defendant argued that the stairs were not in the same condition as they were in at the time of the incident, and therefore the photographs would not have been admissible at trial. We deem this argument to be without merit. The essence of the doctrine of spoliation is an inference that the missing evidence was in fact unfavorable to the defendant. A party is not required to establish that missing evidence would be admissible at trial, but rather must show that the evidence is relevant and that it is unavailable because of the conduct of the despoiler. Therefore, we reject defendant's suggestion that this material has no evidentiary value. Since this evidence was unavailable because of the inappropriate behavior of defendant's employee, Friendly may not be heard to complain that its evidentiary value may have been inconclusive. Moreover, the record discloses that during trial, defendant made no objections concerning Zolkos's testimony. Further, when the trial justice asked whether there were any objections to the jury instruction, defendant objected to the spoliation instruction as it pertained to the work schedules, but made no such objection as it pertained to the not-so-friendly missing photographs. We need not linger long in this area if a party failed to object at trial,

*Fiske v. MacGregor, Division of Brunswick*, 464 A.2d 719, 726 (R.I.1983), or failed to raise an objection to the trial justice's instruction, *Superior Group Ventures, Inc. v. Apollo II Sign Corp.*, 712 A.2d 359, 360 (R.I.1998). Accordingly, defendant may not argue for the first time on appeal that Zolkos's testimony was inadmissible, nor may defendant complain that the instruction was erroneous.

We are cognizant that under the facts of this case, it is apparent that both the court and the jury caught a whiff of something foul with regard to the defendant's inability or unwillingness to produce and preserve relevant evidence. The odor of an orchestrated effort on the part of defendant to suppress relevant evidence that was harmful to defendant's case may have been detected. Unfortunately, the cumulative effect of these incidents of spoliation, especially the confiscation of the photographs, was a problem of defendant's own creation. The fact that its defense suffered in the face of these omissions, some of which were clearly intentional, is the fault of the defendant, not the trial justice nor the plaintiff. Although evidence relating to spoliation harmed defendant's case, we are satisfied that the trial justice did not err in admitting that evidence, nor did he err in his instruction to the jury.

## II

### Jury Instruction

The defendant has alleged that the trial justice erred in his instruction to the jury on the law of premises liability. Specifically, Friendly has challenged a portion of the charge as follows:

"The plaintiff is advancing a proposition.

"That is, that the defendant, being the owner of the restaurant * * * *was negligent in failing to inspect, maintain, discover, and repair a dangerous and unsafe condition* at that restaurant. The plaintiff is specifically saying that the defendant *failed to inspect and maintain the stairs* in the bulkhead

stairwell, leading to the basement, which failure resulted in one of the stairs being in a dangerous and unsafe condition. And plaintiff is saying that it caused him to fall down the stairs and sustain injuries." (Emphases added.)

The defendant argued that these remarks effectively instructed the jury that defendant was under an affirmative duty to inspect and discover any existing dangerous condition on its premises, and as such misstates the parameters of the landowner's duty. However, defendant has challenged only the portion of the court's instructions that relates to plaintiff's claims in the case, and not the law of premises liability. Contrary to defendant's position, the trial justice gave a detailed and correct instruction on landowner liability as follows:

"Under our law, a landowner has a duty to exercise reasonable care for the safety of individuals reasonably expected to be on its premises. A landowner has the duty to use reasonable care to keep and maintain the premises in a safe condition, and to protect those individuals reasonably expected to be on the premises against the risk to be apprehended from the dangerous condition existing on the premises.

"In order to find that the landowner, the defendant here, is liable to the plaintiff, you must find that the landowner knew, or should have known of a dangerous condition on the premises, and failed to exercise due care to remove the dangerous condition [within a] reasonable time [after] having discovered the condition. In this case, the plaintiff must prove by a preponderance of the evidence that the dangerous condition on the premises existed for a sufficiently long period of time, in order to afford the defendant with reasonable notice of the existence of the condition. And that the .defendant, after having acquired such notice of the dangerous condition, failed to remedy the condition, or warn the plaintiff of the dangerous condition.

"A landowner is under no duty to a person reasonably expected to be on the premises, to warn against an open and obvious condition on the premises. The duty imposed upon * * * the plaintiff [is to] act as a reasonable, and prudent person under the circumstances. And this duty includes the obligation and responsibility to look and take into consideration the conditions and circumstances [that] would be obvious to a reasonable [and prudent] person in the same or similar circumstances."

■ Viewed in its entirety, we are satisfied that the trial court's instruction accurately states the law in Rhode Island that a landowner has a duty to exercise reasonable care for the safety of persons reasonably expected to be on the premises, and that duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition. *Cutroneo v. F.W. Woolworth Co.*, 112 R.I. 696, 698, 315 A.2d 56, 58 (1974). Clearly, this duty includes a duty to inspect the premises for obvious and dangerous conditions.

## III

### Interrogatories to the Jury

■ At the conclusion of the charge to the jury, defendant interposed an objection to the use of a verdict form containing four interrogatories to the jury. The defendant specifically objected to interrogatory No. 4, a question that directed the jury, in the event that it found for plaintiff, to consider in its award certain elements of plaintiff's damages. Although defendant alleged on appeal that the verdict form prejudiced or confused the jury, placed too much emphasis on damages, and "promoted a double award for pain and suffering" that requires a "reversal of the judgment," we note that defendant's sole objection at trial related to the court's refusal to use the verdict form that was suggested by

defendant. The defendant never argued, as it did on appeal, the question of whether the interrogatories violated Rule 49(b) of the Superior Court Rules of Civil Procedure, nor did defendant complain to the trial justice that the use of a special interrogatory focused the jury's attention on one element of plaintiff's case, to the prejudice of defendant. Accordingly, we conclude that defendant's failure to articulate its grounds for the exclusion of the interrogatory precludes us from reviewing the merits of this argument. "General objections to instructions, without specific grounds, are not a sufficient basis for review by this court." *Dyson v. City of Pawtucket*, 670 A.2d 233, 237 (R.I.1996) (citing *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I.1986)).

Rule 51(b) of the Superior Court Rules of Civil Procedure requires a party to make an articulate objection that specifically directs the trial court to the error that is alleged. We have repeatedly held that a party may not assign as error a matter not appropriately brought to the attention of the trial justice by " 'stating distinctly the matter to which the party objects and the grounds of the party's objection,' " *DiFranco v. Klein*, 657 A.2d 145, 147 (R.I.1995), thereby affording the trial justice with an opportunity to correct any potential error before the jury retires to deliberate. *Brodeur*, 505 A.2d at 421–22. Therefore, the only error reasonably brought to the attention of the trial justice and not raised on appeal was the refusal to utilize jury interrogatories proposed by defendant. We therefore conclude that this issue has been waived.

## CONCLUSION

For the foregoing reasons, the defendant's appeal is denied and the judgment of the Superior Court is affirmed. The papers of the case may be remanded to the Superior Court.