April 2, 2019

**Supreme Court**

No. 2017-274-Appeal.
(PC 13-820)

Austin Yattaw                          :

            v.                          :

The City of East Providence et al.     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at (401) 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Austin Yattaw                        :

v.                        :

The City of East Providence et al.        :

Present:  Suttell, C.J., Goldberg, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**  Once again, the Supreme Court is confronted with a case involving an innocent adolescent who suffered serious injuries, alleged to be caused by defects in a public park, and who is denied a judicial remedy because the municipality is immune from liability for any negligence.  Although we affirm the entry of summary judgment in this case, we hasten to add that, no matter the age of the child nor the severity of the injury, in light of the protections afforded by the Recreational Use Statute, G.L. 1956 chapter 6 of title 32 (the RUS), there is no recourse in our courts, because users of most public parks are treated as trespassers under the law.[1]

This case came before the Supreme Court on December 6, 2018, on appeal by the plaintiff, Austin Yattaw (Yattaw or plaintiff), from the entry of summary judgment in favor of the defendants (collectively the city or defendants).[2]  The plaintiff brought suit to recover

---

[1] *See, e.g.*, *Symonds ex rel. Symonds v. City of Pawtucket*, 126 A.3d 421, 423, 426-27 (R.I. 2015); *Cruz v. City of Providence*, 908 A.2d 405, 405, 407 (R.I. 2006); *Lacey v. Reitsma*, 899 A.2d 455, 456, 458 (R.I. 2006).

[2] The plaintiff named as defendants in his complaint the City of East Providence and Stephen Coutu, in his capacity as Public Works Manager for the City of East Providence.

damages for injuries he suffered while riding his bicycle in Glenlyon Park,[3] located in East Providence (the park). For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

On June 8, 2010, plaintiff, who was seventeen years old, was injured while riding his bicycle through the park. Presuming that he was riding down a grassy slope on the side of a stairway, plaintiff was unaware of a series of concrete retaining walls located on the slope. The plaintiff alleged he was thrown from his bicycle after his tire became wedged in a crack in one of the concrete retaining walls. As a result, plaintiff sustained a double compound fracture to his left arm.

On February 18, 2013, plaintiff filed suit, asserting that defendants were negligent in maintaining the park. Pretrial discovery proceeded; in its interrogatory answers, the city stated that there had been no previously reported injuries in that area of the park. During his deposition, John Arrighi (Arrighi), a city employee who performed routine maintenance work in the park, testified that at the end of each shift, city employees are required to prepare paper logs, which they call "trip tickets," identifying the location and type of work performed during the shift. When shown a photograph of the area where plaintiff alleged that he had been injured, Arrighi confirmed that he did not observe the condition that was depicted in the photograph, and stated: "If I saw this, I would have documented it on my trip ticket. * * * [S]o it would have [gone] to the correct channel so it would have been repaired." Arrighi testified that the trip tickets he personally filled out were "a lot more extensive" than a document, identified as an expenditure log, that he was shown during his deposition.

---

[3] The record refers to this area as a "park."

Also during discovery, the city produced "Work Order Detail Reports" (work orders) and "Detailed Location Expenditures" (expenditure reports), documenting the maintenance work performed at the park. The plaintiff subsequently made a discovery request for "any and all daily work logs and trip tickets regarding any work to be done, or that was done" at the park, to which the city responded: "Upon information and belief, none known." According to the city, it was not in possession of these logs, which are routinely destroyed.

On May 27, 2015, defendants filed a motion for summary judgment, on the ground that the city was immune from liability under the RUS[4] because the park was open to the public for recreational purposes and the city did not act in a willful or malicious manner in failing to guard or warn against a known danger. The plaintiff filed an objection in which he contended that, under the doctrine of spoliation of evidence,[5] the city's destruction of the trip tickets gave rise to an adverse inference—namely, that the city knew about the defective condition of the retaining wall. According to plaintiff, this negative inference was sufficient to create a genuine issue of material fact as to whether an exception to the RUS applied in this case.

---

[4] Under G.L. 1956 § 32-6-3,

> "an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:
>
> "(1) Extend any assurance that the premises are safe for any purpose;
>
> "(2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor
>
> "(3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of omission of that person."

[5] Spoliation is defined as "[t]he intentional destruction, mutilation, alteration, or concealment of evidence[.]" *Black's Law Dictionary* 1620 (10th ed. 2014).

On August 4, 2015, the motion for summary judgment was argued; and, in a bench ruling, a justice of the Superior Court determined that the only evidence before the court was "speculation that there may have been trip-tickets that would have documented the hazard." Specifically, the hearing justice found that there was "no evidence that these tickets were destroyed in an attempt to conceal something from the plaintiff" and that there was "no other evidence that anyone had any knowledge of this defect[.]" Accordingly, the hearing justice concluded that "the plaintiff has not put forward sufficient evidence to create a genuine issue of material fact that would defeat the recreational use's strong standard and show that the town was aware there was a strong likelihood of injury in that park." The city's motion for summary judgment was therefore granted, and final judgment subsequently entered in favor of defendants. The plaintiff appealed.

## Standard of Review

"This Court reviews *de novo* a trial justice's decision granting summary judgment." *Rohena v. City of Providence*, 154 A.3d 935, 937 (R.I. 2017) (quoting *Sola v. Leighton*, 45 A.3d 502, 506 (R.I. 2012)). "[S]ummary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Coscina v. DiPetrillo*, 186 A.3d 590, 595 (R.I. 2018) (brackets omitted) (quoting *Sola*, 45 A.3d at 506). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *Ahearn v. City of Providence ex rel.*

*Mancini*, 181 A.3d 495, 497 (R.I. 2018) (quoting *National Refrigeration, Inc. v. Standen Contracting Company, Inc.*, 942 A.2d 968, 971 (R.I. 2008)).

**Analysis**

The declared purpose of the RUS is "[t]o encourage landowners to open their property to the public for recreational use[.]" *Smiler v. Napolitano*, 911 A.2d 1035, 1038 (R.I. 2006). To accomplish this purpose, the RUS as originally enacted provided that those who come upon the private land of another for recreational purposes are considered to be trespassers, "thus greatly reducing the duty of care that owners owe to recreational users." *Symonds ex rel. Symonds v. City of Pawtucket*, 126 A.3d 421, 424 (R.I. 2015). Although the RUS initially applied to private landowners, not governmental entities, in 1996, the RUS was amended by the Legislature to include within the umbrella of immunity publicly-owned recreational facilities. *See* § 32-6-2(3), as amended by P.L. 1996, ch. 234, § 1. So now, in the courts of this state, members of the public who frequent most public parks, beaches, and other recreational sites are viewed as trespassers to whom there is no duty to maintain these facilities in a reasonably safe condition.

However, the RUS's immunity is "not absolute." *See Roy v. State*, 139 A.3d 480, 488 (R.I. 2016). An exception to the RUS, § 32-6-5(a)(1), provides that the statute does not limit liability "[f]or the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity after discovering the user's peril[.]" As such, given that users of recreational properties are classified as trespassers, "landowners who open their land to the public for recreational use owe no duty to users of the property other than to refrain from willful or wanton conduct after a user of the property is discovered in peril." *Symonds ex rel. Symonds*, 126 A.3d at 424 (citing *Berman v. Sitrin*, 991 A.2d 1038, 1043-44 (R.I. 2010)).

In the case at bar, it is undisputed that the city owns the park, which is open to the public without charge, and that plaintiff was engaged in an ordinary recreational activity, riding his bicycle. Thus, the city is immune from liability under the RUS. Before this Court, plaintiff contends that genuine issues of material fact exist as to whether the exception set forth in § 32-6-5(a)(1) applies in this case. The fragile premise upon which this appeal rests is the alleged spoliation of the trip tickets. The plaintiff asserts that, because the trip tickets may have contained detailed notes regarding the condition of the area where plaintiff had sustained injury, the city's alleged destruction of the trip tickets raised the adverse inference that the city knew about the defective condition of the wall and failed to guard or warn against it. We reject this contention.

### Spoliation of Evidence

Under the doctrine of spoliation of evidence, "the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party." *Tancrelle v. Friendly Ice Cream Corporation*, 756 A.2d 744, 748 (R.I. 2000); *see also McGarry v. Pielech*, 47 A.3d 271, 282 (R.I. 2012); *Mead v. Papa Razzi Restaurant*, 840 A.2d 1103, 1108 (R.I. 2004) (*Mead I*). "Although a spoliation instruction is improper when 'the destruction was a matter of routine with no fraudulent intent,' it is appropriate when 'the act was intentional or intended to suppress the truth.'" *State v. Roberts*, 841 A.2d 175, 180 (R.I. 2003) (quoting *State v. Barnes*, 777 A.2d 140, 145 (R.I. 2001)); *see Mead v. Papa Razzi*, 899 A.2d 437, 442-43 (R.I. 2006) (recognizing that this Court has held that a spoliation instruction was appropriate "where a corporate defendant (1) failed to produce a document which the evidence tended to show was routinely generated by the corporation and

(2) was unable to provide a satisfactory explanation as to why the document was not prepared with respect to the incident in the case before the court").

In *Mead I*, this Court determined that the spoliation doctrine applied where a defendant failed to produce an incident report which, it was undisputed, was systematically prepared and retained in accordance with its mandatory corporate policy, without a "satisfactory explanation" as to why a report was not available with respect to the incident before the court.  *Mead I*, 840 A.2d at 1108; *see also Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 947 (R.I. 2003) (upholding spoliation instruction when a defendant failed to produce board-meeting minutes despite testimony that minutes were normally retained in the ordinary course of the board's business).

In contrast, there is no indication in the record before us that defendants deliberately or negligently destroyed evidence in anticipation of trial.  Unlike *Mead I*, there is no evidence that the city routinely retained trip tickets in the regular course, nor is there any evidence that defendants tactically discarded only those trip tickets pertaining to plaintiff's accident.  As noted by the hearing justice, "[t]here's no evidence that these tickets were destroyed in an attempt to conceal something from the plaintiff."  Rather, the record suggests that the information on the handwritten trip tickets was manually transcribed into computer-generated forms, such as the work orders and expenditure reports.[6]  Moreover, defendants aptly note that the use of trip tickets as a means of gathering information that is then transcribed into the computer-generated work

---

[6] During his deposition, Arrighi was asked about the process for submitting trip tickets.  Arrighi explained: "There's a bracket on the wall where everyone puts their sheets, and I believe it goes to the secretary."  When subsequently asked whether the secretary used the information from the trip tickets to complete the expenditure forms, Arrighi responded: "I don't know.  I assume that's how that gets to that, yes."

orders and expenditure reports "provides more than a satisfactory explanation as to why the hand-written notes are not routinely kept by the [c]ity."

Because there is no evidence that the city acted deliberately, negligently, or in bad faith with regard to the trip tickets, the spoliation doctrine is inapplicable in this case. Accordingly, the hearing justice did not err in finding that the spoliation doctrine did not apply to the circumstances presented by this case.

### The § 32-6-5(a)(1) Exception to the RUS

Even if the alleged destruction of the trip tickets warranted an application of the spoliation doctrine, this only permits the drawing of an inference that the city was on notice that the retaining wall had a defect and was in need of repair. However, notice of a defective condition alone is not enough to bring plaintiff's claim within the exception to the RUS.

The plaintiff contends that the city's implied knowledge of a defect in the wall is sufficient to prove "willful or malicious failure to guard or warn against a dangerous condition * * * after discovering the user's peril[.]" Section 32-6-5(a)(1). To support his argument, plaintiff asserts that, according to *Berman*, notice of a defective condition is sufficient to show willful and malicious conduct. This assertion is misplaced.

In *Berman*, the plaintiff sustained catastrophic injury when he walked down what appeared to be a path leading off Newport's famed Cliff Walk and the ground beneath him gave way. *Berman*, 991 A.2d at 1042. There were no signs warning of this grave danger. *Id.* at 1055. In deciding whether the City of Newport had "discovered the user's peril[,]" this Court "interpreted the term 'discovering' as used in § 32-6-5(a)(1) liberally and held that it included incidents where the City of Newport had not come upon a specific user in peril but had been put on sufficient notice of a dangerous condition." *Cancel v. City of Providence*, 187 A.3d 347, 351

- 8 -

(R.I. 2018) (discussing *Berman*, 991 A.2d at 1049, 1050, 1051). Notably, this Court held that "[i]t is because of the multiple incidents of death and grievous injury that we conclude that the city [could] not successfully defend [the plaintiff's] claim based on an assertion that it had no specific knowledge of [the plaintiff] or any peril confronting him." *Berman*, 991 A.2d at 1051. Accordingly, this Court held that "a fact-finder reasonably could find that * * * the city voluntarily and intentionally failed to guard against the dangerous condition, knowing that there existed a strong likelihood that a visitor to the Cliff Walk would suffer serious injury or death." *Id.* at 1052.

After viewing the evidence in the light most favorable to the nonmoving party, we are of the opinion that the facts and circumstances of this case are far from the extreme and egregious conduct attributed to the City of Newport in *Berman*. This Court declared in *Berman* that the City of Newport could not seek the protections of the RUS because of the numerous prior incidents of death and serious injury. *Id.* at 1051. We determined that the City of Newport knew that the plaintiff and other users were in a position of peril and was on notice of the defective condition of the Cliff Walk. *Id.* As this Court emphasized, "it [was] the number of serious injuries flowing from a known risk that brings us to this conclusion today." *Id.* Unlike *Berman*, however, the record before the Court in the case at bar is devoid of any evidence that anyone else had ever been injured by the retaining wall or that the city was notified about its defective condition. Furthermore, the record before us lacks any indication that defendants had actual knowledge of the condition, had received complaints about the surrounding area, or had notice of any past incidents resulting from the defective condition of the retaining wall. As there simply is no evidence to support a finding that the city "willful[ly] or malicious[ly] fail[ed] to guard or warn against a dangerous condition * * * after discovering the user's peril[,]" § 32-6-5(a)(1), we

- 9 -

see no error in the hearing justice's refusal to apply the exception of § 32-6-5(a)(1) to plaintiff's claim.

In a final attempt to prevent this claim from falling through the cracks, the plaintiff seeks to have this Court examine the definition of the term "peril." *See Lacey v. Reitsma*, 899 A.2d 455, 456, 458 (R.I. 2006) (holding that § 32-6-5(a)(1) was inapplicable where the plaintiff, a nine-year-old boy, veered over a cliff while riding his bicycle in a state park, because there was no evidence that the defendants discovered the plaintiff "in a position of peril and then failed to warn him against the potentially dangerous condition"). In essence, the plaintiff asserts that the defective condition of the retaining wall placed him in a "position of peril" because it exposed him to a risk of harm. Nonetheless, because the plaintiff failed to raise this argument in the Superior Court, our raise-or-waive rule precludes us from addressing that contention. *See Waterman v. Caprio*, 983 A.2d 841, 847-48 (R.I. 2009) ("According to our oft-repeated 'raise or waive' rule, we will not address an issue that was not presented to the trial court."). Accordingly, we are of the opinion that the plaintiff's argument has not been properly preserved for appeal.

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.


Justice Flaherty did not participate.


- 10 -

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Austin Yattaw v. The City of East Providence et al. |
| **Case Number** | No. 2017-274-Appeal.<br>(PC 13-820) |
| **Date Opinion Filed** | April 2, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Adam J. Resmini, Esq.<br>Ronald J. Resmini, Esq. |
| | For Defendants:<br><br>Caroline V. Murphy, Esq.<br>Marc DeSisto, Esq. |