384 A.2d 1057.

THOMAS CONLIN *et al. v.* GREYHOUND LINES, INC. *et al.*

LUM REALTY, INC. *et al. v.* STATEN ISLAND MOVING AND STORAGE, INC. *et al.*

APRIL 4, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J.   On December 2, 1972 fire damaged a two-family dwelling house and some of its contents. The dwelling, located in West Warwick, was owned by Lum Realty, Inc., Maple Associates and Clarence J. Coutu (the "owners"); the contents belonged to Thomas and Nancy

Conlin (the "Conlins"). The owners and the Conlins (collectively, the "plaintiffs") each commenced a civil action in the Superior Court which, as amended, named as defendants Greyhound Van Lines, Inc. and its agent, Staten Island Moving and Storage, Inc., and charged them with negligently causing the fire.[1] The two actions were consolidated for trial and resulted in jury verdicts of $29,000 for the owners and $9,400 for the Conlins. When the defendants' motions for new trials were granted, the plaintiffs appealed. Thereupon, the defendants cross-appealed, assigning as error the denial of their motions for directed verdicts.

It appears that after Mr. Conlin secured employment in West Warwick, the Conlins rented the first-floor apartment of the owners' dwelling, and engaged defendants to move their furniture and personal effects from their New Jersey residence to that apartment. The shipment was expected to arrive in West Warwick on Saturday morning, December 2, 1972. Mr. Conlin, who was then living alone in the apartment, was required to work that morning and had arranged for a neighbor's 13-year-old son, David Clark, to meet the movers at the apartment and show them where to place the furniture and personal effects. The shipment arrived at about 8:30 a.m., the van was unloaded, and the furniture together with cardboard cartons containing clothing and other personal effects were placed where directed by David. He was present throughout the unloading, except for a brief interval when he telephoned home to request his mother's attendance at the Conlins' apartment so that she could sign a receipt for the shipment.

---

[1] In their original complaint, the Conlins named only Peoples Storage Warehouse Company and Greyhound Lines, Inc. as defendants. In 1975, they filed an amended complaint that included as defendants Staten Island Moving and Storage, Inc. and Greyhound Van Lines, Inc. At the close of plaintiffs' case, the trial justice granted the motions of Peoples Storage Warehouse Company and Greyhound Lines, Inc. for directed verdicts. The Conlins did not appeal.

4

The delivery was completed and the delivery receipt signed at about 9:45 a.m., whereupon David and his mother inspected the premises, ascertained that the doors and windows were locked, and then departed. Later in the morning David, anticipating that he might find Mr. Conlin there, bicycled to the apartment to ask him whether the furniture and effects had been properly placed. Not seeing the Conlins' automobile in the driveway, he concluded that Mr. Conlin had not returned and departed without getting off his bicycle. There is no direct testimony placing either Mr. Conlin or anybody else in the premises from the time David and his mother departed shortly before 10 a.m. until the fire department responded to an alarm at about 12 noon and extinguished the fire. The building and the Conlins' personal effects sustained substantial fire, smoke and water damage.

Although no direct testimony pinpoints the cause of the fire, plaintiffs theorize that a lighted cigarette discarded by one of the movers ignited the cardboard cartons. In support of their theory, they produced David Clark as a witness. He testified that he saw two of the movers employed by defendants smoking cigarettes throughout the unloading operation and that he observed one of them searching for the live head of a cigarette on the floor of the room adjoining the bedroom where the cartons were placed. There was no testimony that the missing head was ever found. Most of what he said was corroborated by his mother. The plaintiffs find further support for their theory in the expert testimony that the point of origin of the fire was in the bedroom containing the cardboard cartons, that no electric outlet, heating element or other possible source of ignition was near that point, that a search of the premises following the fire did not disclose any trace of a foreign flammable substance, that the fire was not of suspicious origin, and that a live cigarette head burns at a sufficiently high temperature to ignite paper.

Other evidence, however, tends to undermine plaintiffs' theory. It consists of testimony by two of the movers that neither they nor the third mover had smoked during the unloading operation or while in the Conlins' apartment; by Mrs. Conlin that her husband was a cigarette smoker; and by David Clark that he had expected Mr. Conlin to return to the apartment after work and before meeting his wife's flight from New Jersey at the airport.

In submitting the case to the jury the trial justice was mindful that the parties had presented theories, but no direct evidence, of the cause of the fire and that plaintiffs' theory required a pyramiding of inferences. Accordingly, and in obvious reliance on *Waldman* v. *Shipyard Marina, Inc.,* 102 R.I. 366, 230 A.2d 841 (1967), he instructed the jury generally that they could pyramid inferences — that is, they could rest one inference upon another — only if they first determined that the prior or basic inference was established to the exclusion of all other reasonable inferences. More specifically, and relating that general instruction to plaintiffs' theory, he charged the jury that their verdicts should be for plaintiffs provided they found, first, that the prior inference that one of defendants' employees discarded a lighted cigarette was established to the exclusion of all other reasonable inferences, and second, that such inference would reasonably support a second or ultimate inference that the discarded cigarette actually ignited the cartons.

The jury then took the case under advisement and, after deliberating for 7 hours over a period of 2 days, returned verdicts for plaintiffs. Those verdicts obviously indicate that the jury resolved the testimonial conflicts in plaintiffs' favor and accepted the prior as well as the secondary inference embodied in plaintiffs' theory. The trial justice disagreed solely because in his judgment the jury's prior or basic inference that one of defendants' employees had carelessly discarded a lighted cigarette was not sufficiently probable to exclude what he termed the equally plausible theory

that Mr. Conlin was the culprit.[2] Accordingly, he granted defendants' motions for new trials and set the verdicts aside.

The question for us is whether the trial justice improperly substituted his judgment for the jury's when he rejected its prior inference as not being the only inference to which the record was reasonably susceptible. Ordinarily, of course, what inference should be drawn from the evidence is, in the first instance, a jury question, *see D'Arezzo* v. *John Hancock Mutual Life Insurance Co.*, 102 R.I. 56, 65-66, 228 A.2d 114, 119 (1967); *Arden Engineering Co.* v. *E. Turgeon Construction Co.*, 97 R.I. 342, 348, 197 A.2d 743, 746 (1964), and its determination should not be disturbed by a trial justice unless in his judgment the evidentiary basis upon which that inference is premised will yield a more natural and probable conclusion, *see Papineau* v. *Personnel Board*, 101 R.I. 359, 362, 223 A.2d 549, 551 (1966); *Labbe* v. *Hill Brothers*, 97 R.I. 269, 275, 197 A.2d 305, 309 (1964).

In this case, the trial justice's disagreement with the jury is premised on the "empty chair" doctrine.[3] Relying on that doctrine, he inferred from Mr. Conlin's unexplained failure to testify that, had he been a witness, his testimony would have been unfavorable to plaintiffs. Then, using that inference as his prop, he found that one could reasonably draw the further inferences that Mr. Conlin returned to the apartment after the Clarks had departed but before the

---

[2]The trial justice also charged that a rejection of the primary inference would destroy it as a basis for a second inference of the probability of the ultimate fact. Notwithstanding that charge and his rejection of the primary inference, he concluded that the "only probable theory" for the cause of the fire was "that it started as a result of a discarded cigarette, match, or ash."

[3]Under the "empty chair" doctrine a litigant's unexplained failure to produce an available witness who would be expected to give material testimony in the litigant's behalf permits, but does not compel, the factfinders to draw an inference that the witness, had he occupied the empty chair, would have testified adversely to the litigant. *McAree* v. *Gerber Products Co.*, 115 R.I. 243, 258-59 n.6, 342 A.2d 608, 616 n.6 (1975); *Anderson* v. *Friendship Body & Radiator Works, Inc.*, 112 R.I. 445, 450-51, 311 A.2d 288, 291-92 (1973); *Benevides* v. *Canario*, 111 R.I. 204, 207, 301 A.2d 75, 77 (1973).

alarm was sounded, that he smoked a cigarette while there, that he smoked it in the room where the cartons were located, that he discarded it while still burning, that it came to rest close enough to the cartons to ignite them, and that, therefore, the ultimate conclusion that Mr. Conlin had caused the fire was as reasonable as the inference that it was one of the defendants' employees.

In effect, the trial justice constructed a ladder of inferences on whose top rung he rested his ultimate conclusion. Those inferences, however, were not available under the "empty chair" doctrine. That doctrine allows only an inference that the missing testimony would have been unfavorable to the party who failed to produce the witness, and its effect is merely to impair the value of that party's proof and to give greater credibility to the opposing party's direct evidence on the issue. *See, e.g., Stocker* v. *Boston & Maine R.R.*, 84 N.H. 377, 379, 151 A.457, 458 (1930); *Greiss* v. *Scarborough Estates, Inc.*, 33 Misc. 2d 52, 53, 222 N.Y.S.2d 1013, 1015 (1962), *aff'd,* 18 App. Div. 2d 1052, 238 N.Y.S.2d 663 (1963), *aff'd* 14 N.Y.2d 39, 248 N.Y.S.2d 37, 197 N.E.2d 530 (1964). Where, as here, no direct evidence of the fact alleged has been presented, the inference deducible from failure to testify cannot take the place of that evidence. *Cf. Enos* v. *W.T. Grant Co.,* 110 R.I. 523, , 528-29, 294 A.2d 201, 204 (1972); *LaPierre* v. *Greenwood,* 85 R.I. 484, 490, 133 A.2d 126, 129 (1957); *McIver* v. *Schwartz,* 50 R.I. 68, 70, 145 A. 101, 102 (1929).

Consequently, the trial justice's conclusion is based on nothing more substantial than sheer speculation and remote possibility, and "a court should never draw an inference from an inference that is itself speculative or of remote possibility." *Waldman* v. *Shipyard Marina, Inc.,* 102 R.I. at 373, 230 A.2d at 845. Indeed, at an earlier stage of the proceedings the trial justice implicitly negated the rationality of the inferences he drew in deciding the new

8

trial motions when, in his decision denying defendants' motions for directed verdicts, he stated that the inference that one of defendants' employees discarded the lighted head of a cigarette excluded all "other reasonable inferences."[4]

In the circumstances we believe that the trial justice improperly substituted his judgment for the jury's, and accordingly, we conclude that he erred by disturbing the jury's verdicts.

All that remains is defendants' contention that their motions for directed verdicts should have been granted. In deciding those motions the trial justice was not permitted to weigh the evidence or pass on the credibility of the witnesses, but was obliged to view the evidence and the inferences reasonably deducible therefrom in the light most favorable to plaintiffs and to submit the cases to the jury if the record so viewed would support verdicts in plaintiffs' favor. *Roberts* v. *Kettelle,* 116 R.I. 283, 292-93, 356 A.2d 207, 214 (1976); *Fontaine* v. *Devonis,* 114 R.I. 541, 543-44, 336 A.2d 847, 850-51 (1975).

In support of their position that the trial justice erred in denying their motions, the defendants merely repeat their argument that the theory that one of their employees discarded a lighted cigarette, even viewed in the light most favorable to the plaintiffs, was not established to the exclusion of all other reasonable theories. What we have

---

[4]The relevant excerpt from the trial justice's ruling denying defendants' motions for directed verdicts reads as follows:

"I believe that there is sufficient evidence in the record now that the smoking in the close proximity of the boxes while unloading possesses that degree of probability to exclude other reasonable inferences.

"The inference I'm talking about is that a cigarette ash, a cigarette, or a match was discarded by these workmen. I believe that is a factual inference, and I believe it possesses that degree of probability so as to exclude other reasonable inferences. And that the jury would then have a right to draw a second inference under proper instruction as to whether the cause of the fire was a negligently discarded cigarette, ash, or match."

already said about that argument in our earlier discussion of the new trial orders applies equally to the rulings on the motions for directed verdicts and need not be repeated. The trial justice did not err in refusing to grant the defendants' motions for directed verdicts.

The plaintiff's appeals from the orders granting defendants new trial are sustained, the orders granting new trials are reversed, the defendants' cross-appeals are denied, and the cases are remanded to the Superior Court for entry of judgments on the verdicts.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Beals & DiFiore, Richard E. Simms* (for Thomas Conlin et al.), *Keenan, Rice, Dolan, Reardon & Kiernan, John W. Kershaw* (for Lum Realty, Inc. et al.), for plaintiffs.

*Gunning, LaFazia & Gnys, Inc., Richard T. Linn* (for Greyhound Lines, Inc. et al. and Staten Island Moving and Storage, Inc. et al.), for defendants.