Ruth HODGES et al.

v.

Patrick J. BRANNON and Merck
& Company, Inc.

No. 96–165–Appeal.

Supreme Court of Rhode Island.

Jan. 13, 1998.

Edward J. Mulligan, Lincoln, for Plaintiff.

Dennis J. McCarten, Elisabet C. Hayes, Thomas D. Gidley, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

FLANDERS, Justice.

In this drug-products liability and medical-malpractice action, a jury found that Vasotec, a prescription drug manufactured by the defendant, Merck & Company, Inc. (Merck),

and prescribed by the defendant physician, Patrick Brannon, M.D. (Dr. Brannon), did not cause the death of the plaintiffs' decedent, George Hodges (Hodges).[1] Because of this finding—which is not directly challenged on this appeal—most of the alleged trial errors relied upon by the plaintiffs in challenging the jury's verdict are moot. Hence we affirm the judgment of the Superior Court and deny the plaintiffs' appeal.

## Facts and Travel

For several years before his death Hodges had been taking multiple medications for various ailments. He had a long history of high blood pressure, of chronic obstructive pulmonary disease, and of persistent asthmatic bronchitis. In September of 1981 Hodges' physician, Patrick Daly, M.D. (Dr. Daly), prescribed a drug known as Captopril (also known as Capoten) for his patient's hypertension. Thereafter, Hodges developed a rash, and his wheezing increased. Attributing Hodges' symptoms to Captopril, Dr. Daly discontinued this medication.

Years later, Hodges became a patient of Dr. Brannon, a cardiologist. On December 16, 1986, Dr. Brannon prescribed Vasotec for Hodges' high blood pressure. Vasotec and Captopril are drugs with similar chemical structures and they belong to the same class of so-called ACE-inhibitor medications.[2] However, before prescribing Vasotec for Hodges, Dr. Brannon reviewed Dr. Daly's records and concluded that Captopril had not caused the rash Hodges had experienced in 1981 after he had taken this medicine.

On the morning of January 10, 1987, Hodges' wife and his daughter were at home when they heard a thud emanating from the kitchen area. Proceeding downstairs to investigate, they found Hodges lying on the floor grasping a respiratory inhaler in his hand. They called a neighbor as well as a rescue service. The neighbor's attempts to resuscitate Hodges continued until the rescue personnel arrived and whisked Hodges away to Roger Williams General Hospital. He remained there in a coma until he died on February 1, 1987. Hospital records attribute his death primarily to a heart attack and secondarily to toxicity resulting from his overuse of the inhaler.

In due course plaintiffs commenced suit against Merck and Dr. Brannon. They alleged an adverse reaction to Vasotec had caused Hodges' death. The plaintiffs also claimed that Dr. Brannon had been negligent in prescribing Vasotec, and that Merck should be held strictly liable for making and distributing this drug without adequate warnings concerning its potential to cause harm to patients like Hodges. They further alleged that Hodges' prior experience with Captopril exacerbated his adverse reaction to Vasotec and that neither Merck nor Dr. Brannon adequately warned Hodges concerning this aspect of his potential vulnerability to Vasotec.

At the conclusion of the trial the jury returned a verdict for defendants. In doing so, it answered special interrogatories that concluded (1) that plaintiffs did not prove by a fair preponderance of the evidence that Hodges' death had been proximately caused by his use of Vasotec and (2) that plaintiffs had not proven by a fair preponderance of the evidence that Dr. Brannon had been negligent in his care and treatment of Hodges or that any negligence by Merck or Dr. Brannon had been the proximate cause of Hodges' death.

## Analysis

Although plaintiffs raise multiple issues on appeal, most of their arguments constitute moot points in light of the jury's finding of no proximate cause. For example, plaintiffs argue that the trial justice erred by using the term "cross-sensitivity"[3] instead of "adverse

---

1. The plaintiff, Ruth Hodges, the decedent's wife, died before the trial of this action. The remaining plaintiffs, Barbara and George Hodges, are the sole heirs at law and/or representatives of the deceased parents.

2. An ACE inhibitor is an angiotensin-converting enzyme inhibitor. These medications are used to control high blood pressure.

3. Cross-sensitivity means that a person is more susceptible to an adverse reaction from a particular type of medicine after having previously taken a different drug that is a member of the

drug reaction" in a portion of the jury instructions.[4] They claim not only that this instruction was at odds with their expert testimony but also that it misled the jury into concluding that it could only find defendants liable if it determined that cross-sensitivity had been the proximate cause of Hodges' death. They contend that the issue was not just Hodges' alleged cross sensitivity to these drugs, but the question of whether Merck's labeling of Vasotec was negligent because of its alleged failure to warn of the drug's potential dangers for patients like Hodges.[5] Thus plaintiffs contend that the evidence about other patients' adverse reactions to Vasotec was much broader than the court's narrow reference to cross-sensitivity would indicate.[6] They further suggest that the court's instructions misled the jurors into believing that they could find defendants liable only for failing to warn Hodges about the potential for cross-sensitivity if he were to use Vasotec. The plaintiffs also assert that the jury instructions ignored the evidence about how other patients had experienced various and sundry adverse reactions after taking Vasotec.

The plaintiffs' theory was that Merck's warning label for Vasotec should have addressed the potential adverse reactions that Vasotec might cause if a patient like Hodges has previously suffered a bad experience after taking Captopril. They contended that Merck should have disclosed that some patients who had experienced an adverse reaction after taking Vasotec, had previously taken Captopril and had developed a rash or experienced some other negative reaction. Accordingly plaintiffs alleged that Merck was negligent because it had placed no cross-sensitivity warning in its October 1986 insert for Vasotec.

■ However, the jury's finding of no proximate cause torpedoed all these failure-to-disclose theories of liability. Although the jury heard extensive expert testimony regarding the alleged inadequacy of the warnings and other disclosures included in the Vasotec inserts and labels and in Merck's written materials, it nevertheless found that Vasotec was not the proximate cause of Hodges' death. Thus, even if the warnings and notices had been inadequate, the unchallenged jury finding was that Vasotec did not cause Hodges' death.[7] Moreover, the alleged deficiencies in the court's instructions to the jury about these warning claims are similarly immaterial. For if, as the jury determined, Vasotec did not proximately cause Hodges' death, then Merck's alleged failure to warn Dr. Brannon about all the potential dangers in prescribing Vasotec could not possibly

---

same class or family of medicines. The plaintiffs' cross-sensitivity theory was that Hodges' prior adverse reaction to Captopril predisposed him to a more intense adverse reaction to a medication of that same class, namely Vasotec.

4. The challenged instruction given by the trial justice was as follows:
   "If you find that Merck's warning about cross-sensitivity to be inadequate, and you find that cross-sensitivity was the proximate cause of the death of George Hodges, you must then determine whether or not Dr. Brannon would have prescribed the drug in 1986 if he had been provided with an adequate warning. If you find that Dr. Brannon would not have prescribed that drug [Vasotec] if he had been given an adequate warning about cross-sensitivity, then Merck is strictly liable for the death of George Hodges."

5. Labeling includes all the information concerning the proper use of the medication, including the clinical pharmacology, contraindications, precautions, warnings, and dosages. This information is typically included as part of a drug-

packaging insert for the medications shipped to pharmacists and physicians.

6. In 1986, when Dr. Brannon prescribed Vasotec for Hodges, Merck's labeling and packaging inserts, as well as other written material, listed the adverse reactions for Vasotec known at that time. These included kidney-function impairment, rashes, angioedema, swelling, and low blood pressure. "Angioedema" refers to a collection of fluid in the soft tissues of the body, causing them to swell. The plaintiffs alleged that Hodges had angioedema of the larynx from Vasotec and claimed that this condition blocked his airway.

7. For example, plaintiffs contend that the jury should have been instructed that the duty to warn a patient necessitates a warning comprehensible to the average user and conveying a fair indication of the nature and extent of the danger to the mind of the reasonably prudent person. But even if plaintiffs are correct (and we express no opinion on the merits of their contentions), the jury's finding of no proximate cause moots these contentions.

have played any role in bringing about Hodges' demise.[8]

■ The plaintiffs next argue that the trial justice erred in restricting the jury's use of the evidence it introduced concerning certain government reports filed by Merck that detailed patients' negative experiences after taking Vasotec. Merck had submitted these reports to the FDA, but the trial justice limited their evidentiary use to the duty-to-warn and notice issues. She specifically instructed the jury that it could not use these reports to prove that Vasotec was the proximate cause of Hodges' death. We do not believe that the trial justice abused her discretion in so ruling. The trial justice was entitled to conclude that the various patients mentioned in these reports were not necessarily similarly situated to each other or to Hodges. Given the case-specific circumstances and diverse medical histories of each patient who may have experienced some kind of an adverse reaction after taking Vasotec, the trial justice justifiably could have considered the reports as containing too many patient variables to be reliably compared to Hodges' own medical history and to his particular physical condition when he was taking Vasotec. Therefore, the trial justice did not abuse her discretion in ruling that these reports should not be admitted into evidence to prove that Vasotec proximately caused Hodges' heart attack and subsequent death.

■ Moreover, our review of the record shows that the trial justice clearly instructed the jury on the issues of proximate causation and strict liability and did not foreclose the jury from finding that Vasotec proximately caused Hodges' adverse reaction for some reason other than cross-sensitivity. In evaluating the propriety of jury instructions, we view the charge "as a whole in light of the meaning and interpretation that a jury com-

posed of ordinary, intelligent lay persons would give them." *Montecalvo v. Mandarelli*, 682 A.2d 918, 922 (R.I.1996) (quoting *Hueston v. Narragansett Tennis Club, Inc.*, 502 A.2d 827, 829 (R.I.1986)). "An erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." *Montecalvo*, 682 A.2d at 922 (quoting *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I.1986)). Thus plaintiffs' contention that the trial judge erred in not using plaintiffs' proffered jury instructions on this point is without merit. *See State v. Lane*, 609 A.2d 633, 636 (R.I.1992). Indeed, notwithstanding the trial justice's limitation on the evidentiary use of Vasotec's adverse-drug reports, the jury in fact heard extensive expert testimony concerning what other users of Vasotec had experienced after taking the medicine. Although in giving her instructions to the jury the trial justice did not use the exact words submitted by plaintiffs, "[j]ury instructions need not be given in the precise form requested as long as they are clearly stated in substance and are adequately covered in the court's charge to the jury." *Id.* (quoting *State v. Jette*, 569 A.2d 438, 442 (R.I.1990)). Thus we are of the opinion that the trial justice's use of the more precise term "cross-sensitivity" instead of "adverse drug reaction" was within her discretion because it was responsive to plaintiffs' evidence on this point and did not, in the context of the entire charge, prejudice plaintiffs' case.

Upon review of the record before us, we cannot say that the jury instructions were erroneous or that they prejudiced plaintiffs. Given the conflicting testimony, reasonable minds could differ with respect to causation. This issue was submitted to the jury as a classic, fact-specific jury question, and the jury decided that the decedent's death was

8. The plaintiffs also contend that the trial justice erroneously excluded the pharmacologist's expert testimony concerning Merck's label changes after Hodges' death, as well as certain FDA reports published in 1990. The plaintiffs proffered this testimony for the first time in their motion for a new trial. The trial justice ruled that its prejudicial effect outweighed its probative value. But here too, because this testimony relates to the adequacy of the warnings given about Vasotec, it is irrelevant since the jury found no causa-

tion. Accordingly plaintiffs' challenge to the trial justice's refusal to allow the above testimony must fail. For the same reason a similar fate befalls plaintiffs' contention that the trial justice erred in dismissing Barbara Hodges' claim for emotional distress on the ground that she was not a minor. Because of the derivative nature of this claim, this argument is also moot in light of the jury's finding that Vasotec did not cause Hodges' death.

not proximately caused by his use of Vasotec. Thus Merck cannot possibly be liable for its manufacturing an allegedly defective product and/or failing to warn about such a product that did not cause Hodges' death. And so too Dr. Brannon cannot possibly be liable for prescribing this drug. Accordingly, for this reason alone we reject plaintiffs' multiple challenges to the trial justice's instructions pertaining to the adequacy of the labeling and warnings about Vasotec.

■ Finally, the plaintiffs argue that the trial justice should have granted their motion for a new trial. We disagree. In returning a verdict for the defendants, the jury credited the defendants' evidence and concluded that the plaintiffs had failed to prove by a preponderance of the evidence that Hodges' death had been caused by Vasotec. The trial justice, upon ruling on the plaintiffs' motion for a new trial, found that sufficient evidence existed to support the jury's verdict. She had the opportunity to assess the witnesses' credibility, to observe them as they testified, and to determine the weight to be given their testimony and the other evidence. Therefore, we have no reason to disturb the trial justice's determination that there was sufficient evidence to support the jury's verdict. *See Donnelly v. Grey Goose Lines, Inc.*, 667 A.2d 792, 794–95 (R.I.1995) (denial of motion for a new trial will be affirmed when trial justice fairly performed the required evidentiary analysis).

### Conclusion

We have carefully examined and considered these and all the plaintiffs' other arguments and we are not persuaded that any of them warrant reversal or a new trial. Thus the plaintiffs' appeal is denied and dismissed, the judgment below is affirmed, and the papers of this case shall be remanded to the Superior Court.

GOLDBERG, J., did not participate.