**Virginia MEAD et al.**

v.

**PAPA RAZZI et al.**

**No. 2004–317–Appeal.**

Supreme Court of Rhode Island.

June 2, 2006.

Mark P. Dolan, Esq., Providence, for Plaintiff.

Lauren E. Jones, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This case has previously occupied this Court's attention. We analyzed the subject of the spoliation of evidence when the case was first before us, and in this opinion we will also be required to grapple with certain aspects of the sometimes elusive law of spoliation.

The first appeal in this case resulted in a remand for a new trial. *Mead v. Papa Razzi Restaurant*, 840 A.2d 1103 (R.I. 2004) (*Mead I*). A second jury trial now having been held, we are called upon at this time to review a judgment of the Superior Court in the plaintiffs' favor pursuant to a jury verdict of negligence on the part of defendants Papa Razzi, Back Bay Restaurant Group, Inc., and BBRG Rhode Island Restaurants, Inc.[1]

### Facts and Travel[2]

At approximately 5:30 p.m. on a clear, dry Saturday evening in September of 1997, Virginia Mead and her husband, Dr. Richard Mead, entered Papa Razzi restaurant in the Garden City section of Cranston, Rhode Island. The restaurant was not yet busy at the time of the Meads' arrival, and they were seated immediately upon entering the restaurant. Their dinner lasted about an hour and a half, after which time Dr. and Mrs. Mead started to

---

1. The defendant Back Bay Restaurant Group, Inc. is a corporation which owns and operates thirty-four restaurants between Washington, D.C. and New Hampshire. The defendant BBRG Rhode Island Restaurants, Inc., which owns and operates Papa Razzi restaurant in Cranston, Rhode Island, is a wholly-owned subsidiary of Back Bay Restaurant Group, Inc. *Mead v. Papa Razzi Restaurant*, 840 A.2d 1103, 1105 n. 1 (R.I.2004) (*Mead I*). For the sake of simplicity, throughout this opinion we shall refer to the defendants collectively as "defendants" or "Back Bay."

2. As we have noted, this case was the subject of an appeal to this Court once before. In *Mead I*, we reversed a trial justice's ruling granting defendants' Super. R. Civ. P. 50 motion for judgment as a matter of law on the basis of our determination that the evidence presented at that trial created issues of material fact which should have been resolved by a jury. *Mead I*, 840 A.2d at 1109. On remand to the Superior Court, a second jury trial took place on May 19 and 20, 2004. The factual background summarized in this opinion is derived from the record established at that second trial.

leave. By that time, the restaurant had grown busy, and the tables were mostly full. As they were leaving the restaurant, the Meads stopped to talk to two acquaintances who were seated at a nearby table. After speaking to their acquaintances for about five minutes, the Meads proceeded to walk towards the restaurant's exit, with Dr. Mead walking slightly ahead and to the right of Mrs. Mead.

After Mrs. Mead took a few steps towards the exit, her left foot slipped forward, causing her to fall. When she fell, her right kneecap hit the hardwood floor and made a loud cracking sound. According to her testimony, while Mrs. Mead was lying on the floor, she noticed an area of about six inches of what appeared to her to be clear liquid, which was located at the point where her foot had slipped. Doctor Mead also testified that he observed an area of about five to six inches of liquid on the floor near where his wife had fallen.

Mrs. Mead lay on the floor of the restaurant for approximately five minutes before emergency medical technicians arrived, and she remained on the floor for about ten more minutes while the emergency personnel attended to her. She was then taken by ambulance to Rhode Island Hospital, where she underwent surgery for a fractured kneecap. Doctor Mead, a retired physician, testified that a restaurant employee carrying a clipboard with a form on it approached him after Mrs. Mead's fall and asked him for his name, address, and the details of what had happened. Doctor Mead further testified that he provided that employee with his contact information, but declined to provide him with further details at that time because he wanted to attend to his wife. Doctor Mead asked the restaurant employee to telephone him at home later so that he could provide further details about the incident.

On March 1, 1999, plaintiffs commenced a civil action in the Superior Court for Providence County. Mrs. Mead sought compensatory damages for her injury, and Dr. Mead sought damages for loss of consortium. As we have indicated, the first trial resulted in a judgment for defendants, but we reversed that judgment and remanded the case for a new trial. The second trial took place on May 19 and 20, 2004.

Karen Eaton, a loss prevention manager employed by Back Bay, testified at trial that, at the time of Mrs. Mead's slip and fall, Back Bay had a corporate policy requiring restaurant staff to prepare a daily sanitation checklist, which included information such as whether the floors were free of water and debris. In addition, according to Ms. Eaton's testimony, Back Bay had a policy requiring restaurant staff to complete an accident report for any incident involving an injury to a restaurant patron. Ms. Eaton further testified that no such report was created with respect to Mrs. Mead's slip and fall; she also stated that the failure to create an accident report was a violation of corporate policy. It was also Ms. Eaton's testimony that, in certain emergency situations, incident reports cannot be created because the restaurant employees who would otherwise create them have to make way for emergency medical personnel so that they can attend to the accident victim. She also testified that, on the next business day after Mrs. Mead's fall, she was informed (by a telephone call from a restaurant employee) of the occurrence of the accident at issue here.

A portion of the deposition testimony of Joseph Paul Dunleavy, a regional manager for Back Bay at the time of the incident, was read into the record at trial. Mr. Dunleavy testified that he was notified about Mrs. Mead's fall on the evening of

the incident and that, upon being so notified, he asked that an accident report be prepared in conformance with corporate policy.

A portion of the deposition testimony of Ann Marie Lagrotteria, who was vice president of operations and training at Back Bay, was also read into the record; that testimony revealed that Ms. Lagrotteria never saw an accident report concerning Mrs. Mead's injury and that she herself never requested one. Ms. Lagrotteria also testified that, not only would it be a violation of corporate policy if such a report did not exist, but also that she was not aware of the occurrence of any injuries within the five years prior to the trial where such an accident report was not prepared.

At the conclusion of the trial, defendants moved for judgment as a matter of law, arguing that the evidence presented at trial did not create factual issues upon which reasonable minds could differ. The trial justice denied defendants' motion, stating: "If ever there was a case that's inferential, it's this, and applying the appropriate standard to this motion, it has to go to the jury."

After deliberating, the jury returned a verdict for plaintiffs, awarding $225,000 in damages to Mrs. Mead and $25,000 to Dr. Mead. The defendants' motion for a new trial was heard and denied on July 1, 2004. The defendants then filed a timely notice of appeal.

On appeal, defendants contend that the trial justice's instruction to the jury with respect to the issue of spoliation contained three separate legal errors, each constituting reversible error. Specifically, defendants argue that the spoliation instruction improperly permitted the jury (1) to determine that defendants' failure to create an accident report constituted spoliation; (2) to conclude that there had been spoliation of evidence without first finding that there had been a deliberate or negligent destruction or loss of evidence; and (3) to "pyramid" inferences in arriving at its finding of negligence.[3]

The defendants also argue on appeal that the trial justice erred in denying their motion for judgment as a matter of law because they contend that the Meads failed to prove that defendants had actual or constructive notice of a small puddle of clear liquid on the restaurant floor prior to the accident. Finally, defendants argue that the trial justice abused her discretion by refusing to allow them to call one of their former employees as a witness—a decision which defendants characterize as a sanction for the former employee's failure to have responded to a subpoena *ad testificandum* that counsel for the Meads had caused to be served upon the former employee during the discovery process.

### Standard of Review

■ It is fundamental that only issues which have been properly raised at trial will be considered by this Court on appeal.

---

**3.** A "pyramiding of inferences" takes place when an inference is drawn from the underlying facts and a second inference is then drawn from that primary inference. This Court has held that a pyramid of inferences must be rejected when "the facts from which [the primary inference] is drawn are susceptible of another reasonable inference." *Waldman v. Shipyard Marina, Inc.*, 102 R.I. 366, 374, 230 A.2d 841, 845 (1967).

In the instant case, however, because defendants did not raise the issue of an alleged pyramiding of inferences at trial, in accordance with our settled appellate practice, we will not consider that issue on appeal. *See Harvard Pilgrim Health Care of New England, Inc. v. Rossi*, 847 A.2d 286, 293 (R.I.2004) ("This Court will not review issues that are raised for the first time on appeal."); *Montecalvo v. Mandarelli*, 682 A.2d 918, 926 (R.I. 1996).

*Montecalvo v. Mandarelli*, 682 A.2d 918, 926 (R.I.1996) ("A party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal."); *see also Harvard Pilgrim Health Care of New England, Inc. v. Rossi*, 847 A.2d 286, 293 (R.I.2004).

In reviewing the appropriateness of a trial justice's jury instructions, this Court examines the instructions " 'as a whole in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them.' " *Lieberman v. Bliss–Doris Realty Associates, L.P.*, 819 A.2d 666, 672 (R.I.2003); *see also State v. Gomes*, 604 A.2d 1249, 1256 (R.I.1992) ("When reviewing the instructions of a trial justice, we must examine the instructions in their entirety in order to determine the manner in which a jury of ordinary intelligent lay persons would have understood the instructions as a whole.").

We will not focus on one phrase or sentence in the instructions without taking into account the context of that phrase or sentence and evaluating the instructions as a whole. As we have said, "[i]t is well settled that this Court will not examine a single sentence apart from the rest of the instructions, but rather the challenged portions must be examined in the context in which they were rendered." *State v. Kittell*, 847 A.2d 845, 849 (R.I.2004) (internal quotation marks omitted). We have also held that "[a]n erroneous charge warrants reversal only if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party." *Hodges v. Brannon*, 707 A.2d 1225, 1228 (R.I.1998) (internal quotation marks omitted).

In passing upon a motion for judgment as a matter of law, the trial justice, "[w]ithout weighing the evidence or evaluating the credibility of witnesses, * * * must consider the evidence in the light most favorable to the nonmoving party * * *." *Wellborn v. Spurwink/Rhode Island*, 873 A.2d 884, 887 (R.I.2005) (quoting *Francis v. American Bankers Life Assurance Co. of Florida*, 861 A.2d 1040, 1045 (R.I.2004)). He or she must draw from the record all reasonable inferences in favor of the nonmoving party. *Wellborn*, 873 A.2d at 887. The motion for judgment as a matter of law must be denied if, after reviewing the evidence, the trial justice concludes that " 'there remain factual issues upon which reasonable persons might draw different conclusions.' " *Id.* (quoting *Francis*, 861 A.2d at 1045). When reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court must apply the same standards as the trial court. *Children's Friend & Service v. St. Paul Fire & Marine Insurance Co.*, 893 A.2d 222, 227 (R.I.2006).

## Analysis

### I

### The Spoliation Instruction

#### A

#### The Substance of the Instruction

The defendants' first argument on appeal is that the trial justice erred when she instructed the jury that defendants' failure to create an accident report concerning Mrs. Mead's fall, despite a company policy requiring that such a report be created, could be deemed to constitute spoliation. It is our opinion that this legal argument is inconsistent with our decision in *Mead I* and therefore must fail.

In *Mead I*, 840 A.2d at 1108, as well as in *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 947 (R.I.2003), we held that it was appropriate for a trial justice to give a spoliation instruction where a corporate defendant (1) failed to produce a document which the evidence

tended to show was routinely generated by the corporation and (2) was unable to provide a satisfactory explanation as to why the document was not prepared with respect to the incident in the case before the court.

■ At the second trial, defendants' employee, Karen Eaton, attempted to explain away defendants' alleged failure to create an incident report for Mrs. Mead's injury by stating that managers were not always able to create such reports, particularly in instances where emergency medical personnel are attending to the injured patron. The determination as to whether or not Ms. Eaton's explanation for defendants' failure to produce an incident report was credible and satisfactory is precisely the sort of issue that lies within the province of the fact-finder. *See Mead I*, 840 A.2d at 1108.[4]

Both Mrs. Mead and her husband testified that a Back Bay employee was present at the scene of her injury and took some information from Dr. Mead. If we were to accept defendants' argument as to the inappropriateness of a permissive spoliation instruction under these circumstances, an employee faced with a similar slip and fall incident could inspect the scene, note the presence of liquid on the floor, conduct an investigation into the cause of the slip and fall, and thereafter opt not to prepare a written incident report—in direct contravention of corporate policy—knowing that such a report would be damaging to the corporation's position in any litigation resulting therefrom.

In denying defendants' motion for a new trial, the trial justice noted in her ruling

that the facts of this case and, in particular, the testimony of Karen Eaton, "begged for" a spoliation instruction. Our examination of that instruction "in light of the meaning and interpretation that a jury composed of ordinary, intelligent lay persons would give them," *Hodges*, 707 A.2d at 1228, leads us to conclude that the trial justice's decision to charge the jury with respect to spoliation was appropriate.

## B

### The Wording of the Spoliation Instruction

■ The defendants also argue that the particular wording employed by the trial justice in her jury instruction concerning spoliation constituted reversible error due to the fact that, according to defendants, the instruction did not require the jury, as a precondition to finding spoliation, to first find that defendants had either deliberately or negligently caused an accident report to be lost or destroyed.

■ In order to properly preserve an objection to a particular jury instruction, a party must distinctly state the matter to which the party objects and the grounds for that objection before the jury begins its deliberation. Super. Ct. R. Civ. P. 51(b). As we have frequently pointed out, Rule 51(b) "bars a party from challenging an erroneous instruction unless [the party] lodges an objection to the charge which is specific enough to alert the trial justice as to the nature of [the trial justice's] alleged error." *Majewski v. Porter*, 121 R.I. 757, 764–65, 403 A.2d 248, 252 (1979); *see also Rossi*, 847 A.2d at 293; *Bourque v. Stop & Shop Companies., Inc.*, 814 A.2d 320, 325

---

4. It should be borne in mind that the trial justice's instruction concerning spoliation was permissive. The trial justice neither explicitly nor implicitly indicated that the jury *was required to* conclude from the evidence at trial that spoliation of evidence had in fact occurred. She simply allowed the jury to make

such an inference while it was weighing the evidence presented at trial. We would also observe that the issue of whether or not a jury should find spoliation in a particular case is ordinarily "fair game" for closing argument by the attorneys for the parties.

(R.I.2003); *Patino v. Suchnik,* 770 A.2d 861, 867 (R.I.2001).[5] Absent a sufficiently specific objection, the trial justice cannot be expected to divine the nature of counsel's objection. *See Seabra v. Puritan Life Insurance Co.,* 117 R.I. 488, 503, 369 A.2d 652, 661 (1977).

In *Seabra,* 117 R.I. at 504, 369 A.2d at 662, this Court held that there was no merit to an appeal predicated upon an allegedly erroneous jury charge where "[t]here was nothing in [defendant's] objection which would alert the trial justice that his * * * terminology was being challenged." Similarly, in the instant case, there was nothing in defendants' objection to the spoliation instruction which would have alerted the trial justice to the fact that defendants were challenging her use of the phrase "innocent or intentional or * * * somewhere between the two."[6] Because defendants did not state with specificity the grounds for their objection to the charge, we shall not address their challenge on appeal to the quoted phrase from the instructions.[7]

## II

### Denial of Motion for Judgment as a Matter of Law

■ The defendants next contend that the trial justice erred when she denied their motion for judgment as a matter of law because, according to defendants, the Meads failed to prove that defendants were on notice of the presence of a small puddle of clear liquid on the restaurant's floor prior to Mrs. Mead's fall. After examining the evidence in the light most favorable to the Meads and drawing all reasonable inferences in their favor, it is our opinion that the trial justice was correct in denying defendants' motion for judgment as a matter of law because issues of fact were raised at trial upon which reasonable minds could differ.

■ With respect to the spoliation issue, as we stated in *Mead I,* the question of whether or not Back Bay employees had prepared an incident report on the night in question, as required by company policy, was an issue of fact to be considered and resolved by the jury. *Mead I,* 840 A.2d at 1108 ("Without a satisfactory explanation that such a report never existed, the jury should be permitted to infer that its production would have had adverse consequences for defendants."). In the instant case, as in *Mead I,* plaintiffs produced evidence about the procedures that defendants ordinarily used to document incidents such as Mrs. Mead's slip and fall. It

---

5. The requirement that instructions be objected to with specificity is in no way arbitrary. The purpose of the specificity requirement is to give the trial justice a chance to remedy any deficiency in the charge while there is still a meaningful opportunity to effectuate such a remedy. *See State v. Hallenbeck,* 878 A.2d 992, 1007 (R.I.2005); *State v. Crow,* 871 A.2d 930, 935 (R.I.2005).

6. The full sentence in which the disputed phrase occurs reads as follows: "Spoliation of evidence may be innocent or intentional or it can be somewhere in between the two."

7. Even if we were to reach that argument, we would do so mindful of our repeated caution against focusing excessively on one small portion of the overall instructions. *See State v. Gordon,* 508 A.2d 1339, 1349 (R.I.1986) ("It is well settled that, in examining a party's challenge to specific instructions, the charge must be viewed in its entirety to determine its correctness. We will not examine single sentences."). An examination of the spoliation instruction given in the present case as a whole reveals that, contrary to defendants' argument, the trial justice did explain that "[w]hen evidence is lost or destroyed, either intentionally or negligently, we call it spoliation of the evidence." That explanation was given prior to the objected-to language in the instruction.

was within the province of the jury, not that of either the trial court or this Court, to determine what inference was to be drawn from that evidence. *See Mead I,* 840 A.2d at 1109; *see also Conlin v. Greyhound Lines, Inc.,* 120 R.I. 1, 6, 384 A.2d 1057, 1059 (1978).

Consequently, we hold that the trial justice's denial of defendants' motion for judgment as a matter of law was appropriate.

### III

### Preclusion of the Testimony of a Defense Witness

 The defendants' final argument on appeal is that the trial justice abused her discretion by refusing to allow them to call as a witness one of their former employees, one Bonnie Laferriere. Ms. Laferriere was one of the managers on duty on the night when Mrs. Mead was injured. It is defendants' contention that the trial justice improperly barred the testimony of Ms. Laferriere as a sanction for her failure to have responded to a subpoena that plaintiffs' counsel had caused to be served upon her during the course of discovery. In response to this appellate contention, the Meads assert that defendants waived the right to raise this issue by failing to include it among their arguments when they moved for a new trial in the Superior Court. The Meads also point to the fact that defendants failed to make an offer of proof as to the anticipated testimony of this witness.

We agree with the Meads' assertion that defendants did not properly preserve this issue and that therefore they may not now raise it on appeal. It is our opinion, however, that it is defendants' failure to have protected the record by making an offer of proof before the trial court, rather than their failure to have raised the issue in

their motion for a new trial, that is fatal to their request for appellate review of this issue. We take this opportunity to dispel any confusion that may exist among some members of the bar as a result of the interpretation of certain comments in our opinion in the case of *Amica Mutual Insurance Co. v. Tashjian,* 703 A.2d 93 (R.I. 1997), in which we discussed the then-new language in Rule 59 of the Superior Court Rules of Civil Procedure.

We do not retreat from what we said in *Tashjian* about the necessity of bringing to the attention of the trial justice presiding over jury trials any arguable *legal* errors that may have been committed by the trial justice during the course of the trial. It is not necessary, however, to itemize at the Rule 59 juncture each and every *non-legal* error that counsel believes may have been committed during the trial (*e.g.,* rulings as to the admissibility *vel non* of a particular piece of evidence).

Because the trial justice's ruling as to the exclusion of a witness's testimony in the present case was not an error of law, we are not prepared to hold that defendants have waived their right to appeal this issue due to the fact that they did not raise it at the Rule 59 juncture.

 Nevertheless, it is well settled that, in order to properly preserve for appeal the issue of whether certain testimony was inappropriately excluded, the litigant must, under circumstances such as those presented here, make an offer of proof after the objection to the expected testimony is sustained. *See Manning v. Redevelopment Agency of Newport,* 103 R.I. 371, 378, 238 A.2d 378, 382 (1968) ("The rule which requires an offer of proof * * * requires an examiner, after objection to a question propounded to a witness has been sustained, to advise the trial court what [the examiner] expected the

witness would have said if allowed to answer."); *see also* R.I. R. Evid. 103(a)(2).

The purpose of the rule requiring the proponent of evidence that the trial justice intends to exclude to make an offer of proof is twofold: (1) to fully advise the trial justice of the substance and value of the proposed evidence; and (2) to preserve the issue for appeal and to put this Court in a position where it can decide whether the complaining party was prejudiced by the exclusion of the testimony. *Manning*, 103 R.I. at 378–79, 238 A.2d at 382. As we said in *Manning*, if the stated purpose is to be realized, the offer of proof "should be reasonably specific * * *; should include a statement of the facts to which the witness would testify * * *; should indicate the purpose and object of the proof offered * * *; and should establish that the evidence sought to be elicited is admissible * * *." *Id.* at 379, 238 A.2d at 382–83.

In the instant case, defendants made no such offer of proof. After the trial justice ruled that defendants would not be permitted to call their former employee to testify, counsel for defendants simply noted his objection on the record, but provided absolutely no indication of what testimony he anticipated that Ms. Laferriere would give. Instead, counsel merely stated:

> "She has information I think that's going to be helpful to the Court. She has testimony I think that's relevant."

The attorney's statement that Ms. Laferriere had information (not described with any specificity whatsoever) that the attorney *thought* would be relevant certainly does not put this Court in a position to determine whether defendants were prejudiced by the exclusion of the testimony of that witness. Consequently, we will not address this issue on appeal.

**8.** The Latin maxim translates, "all things are presumed against a despoiler." *Rhode Island Hospital Trust National Bank v. Eastern Gen-*

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the trial justice in all respects. The record may be remanded to the Superior Court.

Justice SUTTELL, dissenting.

Although I agree with the majority that some form of an instruction on spoliation was appropriate in this case, and indeed virtually required by our decision in *Mead v. Papa Razzi Restaurant*, 840 A.2d 1103 (R.I.2004) (*Mead I*), I believe that the instruction given was erroneous and represents an unwarranted expansion of the doctrine of spoliation. Accordingly, I would vacate the judgment and remand for a new trial.

The doctrine of spoliation is an ancient principle that traces its roots to Roman law. This Court has commented that under the doctrine *omnia praesumuntur contra spoliatorem*,[8] "the destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence would have been unfavorable to the position of the spoliating party." *Rhode Island Hospital Trust National Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227, 1234 (R.I.1996). This adverse inference is predicated on two rationales, one evidentiary and one prophylactic. The former "is nothing more than the common sense observation that a party who has notice that a document is relevant to litigation and who proceeds to destroy the document is more likely to have been threatened by the document than is a party in the same position who does not destroy the document." *Nation–Wide Check Corp. v. Forest Hills Dis-*

*eral Contractors, Inc.*, 674 A.2d 1227, 1234 (R.I.1996).

*tributors, Inc.*, 692 F.2d 214, 218 (1st Cir. 1982). The prophylactic or punitive rationale, on the other hand, is designed to deter parties from destroying relevant evidence before it can be introduced at trial. *Id.*

Before an adverse inference can arise from the destruction of evidence, "the party having control over the evidence must have had an obligation to preserve it at the time it was destroyed." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998). Such an obligation almost certainly arises when suit has been filed, but also may exist when a party should have known that the evidence may be relevant to future litigation. *Id.* This Court articulated this principle in *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744 (R.I.2000), when we observed, "[a]n 'obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely * * *.' " *Id.* at 749 (quoting *Conderman v. Rochester Gas & Electric Corp.*, 180 Misc.2d 8, 687 N.Y.S.2d 213, 217 (Sup.Ct.1998)).

The essence of spoliation, as I perceive it, is "the deliberate or negligent destruction of relevant evidence," *Tancrelle*, 756 A.2d at 749, or the unexplained failure to produce such evidence, *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 947 (R.I.2003); *a priori*, tangible evidence must at one time exist and then either be destroyed or made unavailable. Indeed, this Court has made clear that a jury first must find that the necessary evidence existed before it is permitted to draw an adverse inference from the ab-

sence of such evidence at trial. For example, in *Rhode Island Hospital Trust National Bank*, 674 A.2d at 1230, 1234, in which the plaintiff "routinely tape-recorded some telephone conversations," we remarked that the defendant "was entitled to present to the jury evidence that a recording may have existed but was subsequently destroyed." Also, in *Kurczy*, 820 A.2d at 947, we considered the unavailability of the defendant's board-meeting minutes notwithstanding its routine practice of retaining such minutes, and held that "the trial justice properly instructed the jury that it must first find that defendant either deliberately or negligently caused the board-meeting minutes to be unavailable before it decided whether to draw an adverse inference that the missing evidence could have been unfavorable to defendant." Likewise, in *Mead I*, 840 A.2d at 1108, we explained: "In light of testimony that defendants systematically prepared and retained such documents in accordance with corporate policy, it is an issue of fact whether the incident report was prepared. Without a satisfactory explanation that such a report never existed, the jury should be permitted to infer that its production would have had adverse consequences for defendants." The presumption underlying our case law is that, for a party to be branded a spoliator, relevant evidence at one point must have existed that could have been spoliated.

In the case under review, I believe the following segments of the trial justice's instruction constitute reversible error: [9]

9. The trial justice's complete charge on spoliation was as follows:
 "When evidence is lost or destroyed, either intentionally or negligently, we call it spoliation of the evidence. Under certain circumstances, the spoliation of evidence may give rise to an adverse inference that the spoliated evidence would have been un-

favorable to the position of the party who lost or destroyed it.
 "Spoliation of evidence may be innocent or intentional or it can be somewhere in between the two. It is the unexplained loss or destruction of relevant evidence that gives rise to an inference that the evidence

"If you find that Back Bay Restaurant Group had information and/or documentation regarding the incident which it failed to record contrary to its corporate policy, which should have been recorded immediately following the incident, then you are permitted to infer in your consideration of the evidence that it would have been unfavorable to the defendants' position in this case.

"For example, if you find that Back Bay Restaurant Group and/or its employees would have had information regarding the incident or the liquid on the floor and failed to memorialize it in the required accident report, or had an accident report and lost or destroyed it, you are permitted to infer in your consideration of the evidence that that information and/or documentation would have been unfavorable to defendant."

The instruction does not charge the jury to find as "an issue of fact whether the incident report was prepared," as provided in *Mead I*, 840 A.2d at 1108, nor does it require the jury to determine whether defendant presented "a satisfactory explanation that such a report never existed." *Id.* Rather, the instruction allows the jury to draw an adverse inference from the mere failure to prepare the required accident report, no matter what the reason. This, in my view, is not consistent with *Mead I* and is a significant expansion of the doctrine of spoliation.

A review of the record reveals the presence of evidence from which the jury might find that defendant offered a reasonable explanation for failing to produce an accident report about the incident. Doctor Mead testified that he gave only his name, address, and telephone number to a restaurant employee who approached him with a clipboard with an "official-looking form on it." Understandably, Dr. Mead declined to provide more details at

lost or destroyed would have been unfavorable to the position of the spoliator.

"If you find that Back Bay Restaurant Group had information and/or documentation regarding the incident which it failed to record contrary to its corporate policy, which should have been recorded immediately following the incident, then you are permitted to infer in your consideration of the evidence that it would have been unfavorable to the defendants' position in this case.

"For example, if you find that Back Bay Restaurant Group and/or its employees would have had information regarding the incident or the liquid on the floor and failed to memorialize it in the required accident report, or had an accident report and lost or destroyed it, you are permitted to infer in your consideration of the evidence that that information and/or documentation would have been unfavorable to defendant.

"Similarly, if you find that defendant lost or destroyed daily sanitation checklists for the date of the incident, you may infer in your consideration that that evidence similarly would have been unfavorable to the defendants' position in this case.

"In deciding whether the loss of evidence, information, accident report or sanitation checklist was deliberate, you may consider all of the facts and circumstances which were proved at trial and which are pertinent to that item of evidence.

"You may consider who lost, destroyed or failed to record it, how it was lost, destroyed or failed to be recorded, the legitimacy or lack thereof, the destruction or failure to record, whether the individual losing, destroying or failing to record the evidence knew the evidence might be supportive to the opposing party, whether the spoliation was intended to deprive the Court of evidence, as well as other facts and circumstances which you find to be true.

"You may also consider the extent to which it has been shown that the spoliated evidence would have been unfavorable to defendants' position.

"If the spoliation of the evidence is attributable to carelessness or negligence on the part of the spoliator, you may consider whether the carelessness or negligence was so gross as to amount to a deliberate act."

the time, but invited the employee to telephone him later. Similarly, Mrs. Mead provided only her name and address before she was taken out of the restaurant by the emergency medical personnel. She said that she was not contacted afterward by anyone on behalf of the restaurant about the incident.

Karen Eaton, a loss prevention manager for defendant Back Bay Restaurant Group, testified that, realistically, accident reports are not always prepared, although it is corporate policy to do so for incidents involving an injury to a guest. For example, an accident report is not always generated, she explained, if a patron suffers a heart attack, stroke, or similar injury requiring emergency medical assistance. Moreover, Ms. Eaton testified that she had a specific recollection that an accident report chronicling this incident never was prepared. Supporting this proposition, in their respective depositions that were read into the record at trial, Anne Marie Lagrotteria, vice-president of operations and training, and Joseph Paul Dunleavy, a regional manager for Back Bay Restaurant Group, both testified that they never saw an accident report concerning the incident in question.

From the testimony of Ms. Eaton, Ms. Lagrotteria, and Mr. Dunleavy, the jury could have found that an accident report never existed. The jury was free to reject their testimony, and may well have done so, particularly in light of the trial justice's comments at the hearing on the defendants' Super.R.Civ.P. 50 motion that Ms. Eaton was defensive, inconsistent, unresponsive, and cavalier. Conversely, as the majority opinion implies, the record provided evidence from which the jury could have found that an accident report was generated. However, the trial justice's instructions failed to adequately apprise the jury of its obligation to find that an acci-

dent report was, in fact, prepared before it was permitted to draw any adverse inferences from the defendants' failure to produce such a report.

In this case, no evidence whatsoever was introduced to explain how the liquid came to be on the floor, how long it had been there before Mrs. Mead fell, or whether the defendants had any actual or constructive notice of its presence. It is difficult to discern a factual predicate for the defendants' liability other than by drawing an adverse inference from their failure to produce an accident report. A necessary precursor to the jury's ability to draw such an adverse inference, however, was a determination that an accident report at one time existed. Lacking that factual predicate, the majority's endorsement today of the trial justice's instruction, in effect, commandeers the doctrine of spoliation to enforce, with severe consequences, a corporate policy of creating accident reports. Because I believe that the jury instruction permitted the jury to draw negative inferences merely from the defendants' failure to memorialize the information, I respectfully dissent.